IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03099-MEH

BEYER LASER CENTER, LLC, and
CRAIG F. BEYER,

      Plaintiffs,

v.

MATEJ POLOMSKY,

      Defendant.

_____

# ORDER

_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Defendant's Motion to Dismiss [filed December 23, 2016; ECF No. 12]. The Motion is fully briefed, and the Court held oral argument on February 16, 2017.[1]  Defendant's Motion first asks the Court to determine whether Defendant is entitled to absolute or statutory immunity.  Alternatively, Defendant seeks dismissal of Plaintiffs' Amended Complaint for failure to state a claim.  The Court holds that dismissing the Amended Complaint on the basis of Defendant's immunity from liability is not proper at this time.  Additionally, with the exception of Plaintiffs' claim for abuse of process, which Plaintiffs agree to dismiss, the Court finds that each of Plaintiffs' causes of action state a claim on which relief may be granted.  Therefore, Defendant's Motion to Dismiss is granted in part and denied in part.

_____

[1] The parties consented to this Court's jurisdiction pursuant to D.C. Colo. LCivR 40.1 on December 28, 2016.  *See* ECF No. 13.

## BACKGROUND

The claims in Plaintiffs' Amended Complaint derive from an ethics complaint Defendant filed with the Colorado State Medical Board ("CMB") against Plaintiff Craig Beyer.  Defendant responded to Plaintiffs' Amended Complaint by filing the present Motion, which seeks dismissal of the case in its entirety.

## I.   Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiffs in their Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Beyer and Defendant are medical doctors practicing ophthalmology and performing corrective vision surgeries.  Am. Compl. ¶¶ 1–2, 5.  Beyer operates his ophthalmology practice through Plaintiff Beyer Laser Center, LLC ("BLC").  *Id.* at ¶ 2.  Defendant worked for BLC as a fellow from July 2012 through December 2012.  *Id.* at ¶ 7; Ex. A to Am. Compl. 7, ECF No. 18.  In November 2012, a former employee of BLC asked Defendant to file a false complaint with the CMB.  Am. Compl. ¶ 12.  Defendant and the former employee then agreed to falsely allege in CMB complaints that Beyer had been switching patients' laser vision correction treatment cards without the patients' knowledge or permission.  *Id.* at ¶¶ 12, 17, 99.  Before filing the complaint, Defendant did not review patient files, consult professional literature, or perform any other investigation to substantiate the allegations he made.  *Id.* at ¶¶ 27–31.

Defendant and the former BLC employee entered into the conspiracy and filed their

complaints with the intent to injure Plaintiffs' reputations and unfairly compete with Plaintiffs. *Id.* at ¶¶ 98–99. Additionally, Defendant filed the complaint, because he feared that he could have professional and legal exposure if he knew about unethical conduct, but failed to notify the CMB. *Id.* at ¶¶ 34–35.

The CMB initiated an investigation into Beyer's conduct and temporarily suspended Beyer's license in March 2015. *Id.* at ¶ 50. After the CMB held a hearing on Beyer's conduct, it concluded that the actions were ethical, and it reinstated Beyer's license. *Id.* at ¶ 51. As a result of Defendant's CMB complaint and the conspiracy to harm Beyer's reputation, current and prospective patients, surgeons, and service providers canceled their contracts with Plaintiffs. *Id.* at ¶¶ 88–90. This has harmed Plaintiffs' reputations and caused Plaintiffs to suffer a loss of income. *Id.* at ¶¶ 64–67.

## II.    Procedural History

Based on these factual allegations, Plaintiffs filed their First Amended Complaint in Boulder County, Colorado District Court on October 27, 2016. ECF No. 4. Plaintiffs assert five claims for relief: (1) defamation, (2) abuse of process, (3) malicious prosecution, (4) intentional interference with contractual relations, and (5) civil conspiracy. *Id.* at ¶¶ 70–103. Defendant removed the case to this Court on December 16, 2016. Notice of Removal, ECF No. 1. On December 23, 2016, Defendant filed the present Motion to Dismiss. Def.'s Mot. to Dismiss, ECF No. 12. Defendant argues he is immune from liability for any injuries Plaintiffs suffered as a result of his CMB complaint. *Id.* at 6–11. Additionally, Defendant asserts that even if the Court finds he is not entitled to absolute or statutory immunity, Plaintiffs' Amended Complaint fails to properly state a claim. *Id.* at 12–18.

Plaintiffs responded to Defendant's Motion on January 13, 2017. Pls.' Resp., ECF No. 22.

Plaintiffs contend Defendant is not entitled to absolute immunity, because the statutory immunity found in Colo. Rev. Stat. § 12-36-118(3)(b) displaced the common-law absolute immunity. *Id.* at 6–7. Furthermore, Plaintiffs contend Defendant is not entitled to statutory immunity, because the Amended Complaint alleges Defendant lacked good faith when he filed the CMB complaint. *Id.* at 3–5. Finally, Plaintiffs assert that each of their causes of action states a claim on which relief may be granted. *Id.* at 7–10. Defendant filed a Reply on January 27, 2017. ECF No. 23.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the

---

[2] Although Defendant brings his Motion under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant does not cite, and the Court does not find, any support for the proposition that Colorado common-law absolute immunity is a jurisdictional question. The authorities Defendant cites on pages three and four of his Motion establish that courts should resolve the absolute immunity issue at the earliest possible stage of the litigation, not that courts lack jurisdiction over controversies with parties who are absolutely immune from suit. Moreover, unlike governmental immunity, Colorado courts have analyzed absolute immunity under Colo. R. Civ. P. 12(b)(5), which is Colorado's equivalent to Fed. R. Civ. P. 12(b)(6). *See Merrick v. Burns, Wall, Smith, & Mueller, P.C.*, 43 P.3d 712 (Colo. App. 2001); *Foster v. Plock*, No. 15CA0346, 2016 WL 908728 (Colo. App. Mar. 10, 2016).

4

allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context."  *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim.  *Khalik*, 671 F.3d at 1191.

## ANALYSIS

The Court will first address whether Defendant is entitled to absolute immunity for the statements he made in the CMB complaint.  After concluding that common-law absolute immunity does not apply here, the Court will analyze whether Defendant is entitled to statutory immunity under Colo. Rev. Stat. § 12-36-118(3)(b).  The Court finds that dismissal on the basis of statutory immunity is not proper at this time, because the Amended Complaint sufficiently alleges Defendant's lack of good faith.  Finally, the Court will address the sufficiency of Plaintiffs' claims for relief.  With the exception of Plaintiffs' abuse of process claim, which Plaintiffs agree to dismiss, the Court finds that each of Plaintiffs' claims sufficiently alleges a cause of action.

## I.    Absolute Immunity

Because Plaintiffs bring state-law claims only, the Court must address whether Defendant is absolutely immune under Colorado common law.  *Aspen Orthopaedics & Sports Med., LLC v.*

*Aspen Valley Hosp. Dist.*, 353 F.3d 832, 837 (10th Cir. 2003) ("[S]tate law governs the applicability of immunity to state law claims . . . ." (quoting *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998))); *Gray-Hopkins v. Prince George's Cty., Md.*, 309 F.3d 224, 231 (4th Cir. 2002) (stating that in analyzing state-law claims, the court "must look to substantive state law . . . in determining the nature and scope of a claimed immunity"). The determination of whether a privilege or immunity applies is generally a question of law for the court. *Hoffler v. State Pers. Bd.*, 7 P.3d 989, 990 (Colo. App. 1999); *Walters v. Linhof*, 559 F. Supp. 1231, 1236 (D. Colo. 1983) ("It is a preliminary question of law for the court to determine whether the circumstances give rise to a privilege.").

Under Colorado common law, "the general rule is that communications made in the course of judicial proceedings . . . are absolutely privileged if they bear a reasonable relationship to the subject of the inquiry." *MacLarty v. Whiteford*, 496 P.2d 1071, 1072 (Colo. App. 1972) (holding that the defendant's statements in a letter to the state liquor licensing authority were absolutely privileged under Colorado common law). Colorado courts have extended absolute immunity to statements made in preparation for and during quasi-judicial proceedings. *Merrick v. Burns, Wall, Smith, & Mueller, P.C.*, 43 P.3d 712, 714 (Colo. App. 2001) ("Communications preliminary to a judicial proceeding are protected by absolute immunity only if they have some relation to a proceeding that is actually contemplated in good faith."); *Dorr v. C.B. Johnson, Inc.*, 660 P.2d 517, 519 (Colo. App. 1983) (holding that statements made in a report that the defendant was required to file under the Workers Compensation Act were absolutely privileged).

Defendant claims he is entitled to common-law absolute immunity for the statements he made in his CMB complaint, because the allegations were used to launch an investigation into Beyer's conduct. Def.'s Mot. 10–11. In response, Plaintiffs argue that absolute immunity does not

apply here, because Section 12-36-118(3)(b) derogated absolute immunity in this context.  Pls.' Mot.

6–7.  The Court agrees with Plaintiffs, and holds that when the Colorado Legislature enacted Section

12-36-118, it replaced common-law immunities for those filing ethics complaints against doctors.

"Common law principles apply in Colorado only in the absence of statute."  *Brown v.*

*Rosenbloom*, 524 P.2d 626, 628 (Colo. App. 1974) (citing *Colo. State Bd. of Pharmacy v. Hallett*,

296 P. 540 (Colo. 1931)).  Accordingly, "[s]tatutes granting immunity are in derogation of common

law and, hence, must be strictly construed."  *State v. Nieto*, 993 P.2d 493, 506 (Colo. 2000).

Pursuant to this general principle, the Colorado Court of Appeals held in *Brown* that common-law

immunities did not apply, because "the scope of immunity for [medical commissions] is specifically

defined by [statute]."  524 P.2d at 628.  Similarly, in *Hoffler*, the court found that "the common law

privilege [did] not apply" where specific regulations required individuals to assist investigators with

full and accurate information.  7 P.3d at 991.  Therefore, because Colorado statutory law defines the

scope of immunity for persons filing complaints with the medical board, Colorado common-law

immunities do not apply.

In his Reply, Defendant cites three cases for the proposition that a legislature must include

specific statutory language to abolish common-law immunities.  Def.'s Reply 7, ECF No. 23 (citing

*Pierson v. Ray*, 386 U.S. 547, 556 (1967); *Martin v. Duffie*, 463 F.2d 464, 468 (10th Cir. 1972);

*Imbler v. Pachtman*, 424 U.S. 409 (1976)).  Additionally, the Tenth Circuit has specifically rejected

an argument that the immunity found in Colo. Rev. Stat. § 12-36-118(3)(b) displaced federal

absolute immunity.  *Horwitz v. State Bd. Of Med. Exam'rs of State of Colo.*, 822 F.2d 1508, 1516

(10th Cir. 1987).  However, these cases all dealt with claims brought under federal law, and were

thus applying federal, instead of state, immunities law.  Although federal courts may require an

explicit statement to find that Congress intended to replace federal common-law immunities, Colorado courts have not required such a statement to find that the Colorado Legislature derogated a state common-law immunity. *See Brown*, 524 P.2d at 628. Moreover, regarding *Horwitz*, it is clear that a state legislature has no power to derogate federal law. U.S. CONST. art. VI, cl. 2. For that reason, Section 12-36-118(3)(b) did not eliminate the application of federal absolute immunity over a Section 1983 claim. *See Horwitz*, 822 F.2d at 1516. Equally clear is that the Colorado Legislature can overrule any part of Colorado common law. *See, e.g.*, *Hallett*, 296 P. at 542 (stating that the common law "may be repealed, without violating [the Colorado] Constitution, by our General Assembly at any time it chooses to do so"). Therefore, although it is true that state statutory immunities do not abolish federal common-law immunities, state statutes may replace state common-law immunities.

Accordingly, the Court holds as a matter of law that absolute immunity does not apply to the claims in this case. Defendant is immune from liability only if the statutory immunity in Section 12-36-118(3)(b) applies.

## II.      Statutory Immunity

Defendant next argues that even if absolute immunity does not apply, this suit is barred by statutory immunity.[3]  Def.'s Mot. 6–10.  Colo. Rev. Stat. § 12-36-118(3)(b) provides qualified-

---

[3] The Court notes that this argument may not be proper at the motion-to-dismiss stage. Unlike qualified immunity in the civil rights context, Section 12-36-118(3)(b) explicitly provides immunity from liability, instead of immunity from suit. *See Decker v. IHC Hosps., Inc.*, 982 F.2d 433, 436 (10th Cir. 1992) (holding that a state statute established immunity from liability, because the plain language of the statute did "not explicitly establish immunity from suit"). Therefore, the statutory immunity found in Section 12-36-118(3)(b) establishes an affirmative defense, which is typically raised in an answer instead of a motion to dismiss. *See Mattson v. Harrison*, 929 P.2d 41 (Colo. App. 1996) (stating that the Colorado Supreme Court has held that an immunity from liability "must be raised as an affirmative defense"); *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155,

statutory immunity from liability for persons who file a complaint with the CMB against a doctor.

In full, the section provides:

> Any member of the board, any member of the board's staff, any person acting as a witness or consultant to the board, any witness testifying in a proceeding authorized under this part 1, and any person who lodges a complaint pursuant to this part 1 shall be immune from liability in any civil action brought against him or her for acts occurring while acting in his or her capacity as board member, staff, consultant, or witness, respectively, if such individual was acting in good faith within the scope of his or her respective capacity, made a reasonable effort to obtain the facts of the matter as to which he or she acted, and acted in the reasonable belief that the action taken by him or her was warranted by the facts. Any person participating in good faith in the making of a complaint or report or participating in any investigative or administrative proceeding pursuant to this section shall be immune from any liability, civil or criminal, that otherwise might result by reason of such participation.

Colo. Rev. Stat. § 12-36-118(3)(b).  Colorado courts have not yet interpreted the meaning of this immunity provision.

As an initial matter, the parties disagree as to what the statute requires to establish immunity from liability.  At oral argument, Defendant asserted that information and belief of wrongdoing is all that the statute requires for doctors filing complaints, because fellow doctors have a duty to report unethical conduct "upon information and belief."  *See* Colo. Rev. Stat. § 12-36-118(3)(a).  However, without excluding doctors, subsection (3)(b) clearly requires all individuals to file complaints in good faith.  Moreover, the two requirements compliment, instead of contradict, one another.  A

---

1163 (Colo. 2013) ("An affirmative defense . . . is typically raised in an answer, not in a motion to dismiss. This is so because a plaintiff has no obligation to anticipate an affirmative defense in the complaint and include allegations intended to negate it." (internal citations omitted)).  An exception to this general rule exists when the affirmative defense appears on the face of the complaint itself, such as when a claim is barred by the applicable statute of limitations. *See Silver v. Quora, Inc.*, No. 16-2173, 2016 WL 6892146, at *2 (10th Cir. 2016) (quoting *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)).  Here, none of Plaintiffs' causes of action explicitly required them to plead a lack of good faith.  Therefore, the Court does not believe the immunity defense appears on the face of the Amended Complaint.  However, because this procedural issue is ultimately inconsequential to the Court's holding, the Court need not definitively determine this issue.

doctor with information and belief of another doctor's wrongdoing has a duty to file a complaint, and he or she must do so in good faith. Accordingly, the Court finds that to receive immunity under the statute, Defendant must have made the complaint against Beyer in good faith.

Plaintiffs argue that not only must doctors make a complaint in good faith, but the statute also requires them to make a reasonable investigation and have a reasonable belief of wrongdoing. Pls.' Resp. 4. Defendant argues that under the plain language of the statute, the two additional requirements apply only to board members, staff, consultants, or witnesses in board hearings. Def.'s Reply 4–5. According to Defendant, the requirements for persons lodging a complaint are found in the following sentence, which requires only good faith. *Id.*

The Court agrees with Defendant. The statute specifically states that an individual "acting in his or her capacity as board member, staff, consultant, or witness" must act in good faith, make a reasonable investigation, and act on a reasonable belief. Colo. Rev. Stat. § 12-36-118(3)(b). The statute excludes persons lodging a complaint from this sentence, and instead delineates the immunity requirements for complainants in the next sentence: "Any person participating in good faith in the making of a complaint or report or participating in any investigative or administrative proceeding pursuant to this section shall be immune from any liability . . . ." *Id.* Therefore, the Court finds that individuals filing a complaint are entitled to immunity if they do so in good faith.

"Good faith" is not defined in the statute or by subsequent Colorado case law. Black's Law Dictionary defines good faith as: "A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." *Good Faith*, BLACK'S LAW DICTIONARY (10th ed. 2014). Colorado courts have relied

10

on this definition in analyzing the statutory meaning of good faith.  In *Credit Service Co. v. Dauwe*, the court considered the meaning of good faith as the term is used in Colo. Rev. Stat. § 19-3-309, which provides immunity from liability to any person participating in good faith in the making of child abuse report.  134 P.3d 444, 445–47 (Colo. App. 2005).  The court held that a lack of good faith requires some evidence that the defendant acted dishonestly or that he intended to seek an unconscionable advantage.  *Id.*  The court also held that because the statute at issue exempted from immunity individuals filing reports willfully, wantonly, or maliciously, good faith includes objective and subjective components; the objective component requiring some factual basis for the defendant's statement and the subjective competent requiring a lack of evil motive or intent to harm. *Id.*

Based on this precedent, the Court finds a lack of "good faith," as it is used in Section 12-36-118(3)(b), requires evidence that the complainant intended to seek an unconscionable advantage, acted dishonestly, or had an evil motive or intent to harm.  However, unlike the statute at issue in *Dauwe*, the Court does not find that the Legislature intended to include an objective component. For certain persons directly involved in the hearing process, the statute adds requirements that those individuals act with a reasonable belief and after a reasonable investigation of the facts.  Colo. Rev. Stat. § 12-36-118(3)(b).  These additional requirements are similar to an objective requirement that an individual must have some factual basis for wrongful activity.  *See Dauwe*, 134 P.3d at 447. Interpreting "good faith," as used in Section 12-36-118(3)(b), to include an objective "factual basis" requirement would, thus, render superfluous the additional requirements applicable only to individuals involved in the hearing process.  Because courts should "construe a statute so as to give effect to every word," *Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo. 2000), the Court holds

11

that a lack of good faith includes only a subjective component.  Therefore, the issue before the Court is whether Plaintiffs' Amended Complaint at least plausibly demonstrates that Defendant filed the CMB complaint dishonestly, with evil motive, with an intent to harm Plaintiffs, or to seek an unconscionable advantage of Plaintiffs.

First, the Court notes that it is difficult to establish a lack of good faith at the motion-to-dismiss stage.  "[I]ssues of reasonableness and good faith are particularly unsuitable for [dismissal prior to trial]."  *Woodward v. Bd. of Dirs. of Tamarron Ass'n of Condo. Owners, Inc.*, 155 P.3d 621, 625 (Colo. App. 2007); *see also Decibel Credit Union v. Pueblo Bank & Trust Co.*, 996 P.2d 784, 787 (Colo. App. 2000) ("Generally, a court may not resolve issues pertaining to a party's good faith or lack thereof [prior to trial] because this decision requires an evaluation of a party's subjective intent.").  Moreover, although not directly relevant to state-law immunity, the Tenth Circuit has stated while addressing federal claims that "asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than applies on summary judgment."  *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

In accordance with the stringent standard at this stage of the case, the Court believes Plaintiffs have sufficiently alleged that Defendant made the CMB complaint without good faith. Plaintiffs primarily argue that Defendant lacked good faith, because he made the complaint to protect his own professional reputation.  Am. Compl. ¶ 34, ECF No. 4; Pls.' Resp. 4.  The Court finds these allegations insufficient to constitute bad faith.  Indeed, making a complaint to disassociate oneself with unethical conduct and out of a concern for receiving professional discipline in the future does not constitute dishonesty, evil motive, or an intent to seek an unconscionable advantage.

However, Plaintiffs also allege Defendant intentionally caused BLC's patients to terminate their contracts with BLC and that Defendant conspired with another individual to injure Plaintiffs' reputations and unfairly compete with BLC.[4]  Am. Compl. ¶¶ 92, 98–99.  According to Plaintiffs, this conspiracy began when a former BLC employee, who Defendant knew was competing with Beyer, asked Defendant to file a complaint against Beyer.  *Id.* at ¶¶ 14, 20–22.  Accepting these allegations as true,[5] they sufficiently allege that Defendant lacked good faith when he made the

---

[4]  The Court notes that the allegations regarding Defendant's intent contained in paragraphs 92, 98, and 99 of Plaintiffs' Amended Complaint arguably contradict Plaintiffs' allegation that Defendant's "sole purpose in filing his DORA Complaint was to protect himself, his reputation, and his career."  Am. Compl. ¶ 34.  The Court acknowledges that contradictory allegations are not well-pleaded facts that a court must accept as true.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1395 (10th Cir. 1997) ("[M]ere legal conclusions and factual allegations that contradict [] a properly considered document are not well-pleaded facts that the court must accept as true.").  However, the Court must accept one version of Plaintiffs' facts—either that Defendant's sole purpose was to protect his reputation or that he and a coconspirator agreed to file CMB complaints with the intent to unfairly compete with Plaintiffs.  Because "all doubts and ambiguities concerning the meaning and intentions of the pleader's language must be resolved in favor of the claim attempted to be stated," the Court will accept Plaintiffs' allegations of improper intent.  *Politte v. McDonald's Corp.*, 16 F.3d 417, at *9 (10th Cir. 1994) (Table) (quoting *Clyde v. Broderick*, 144 F.2d 348, 350 (10th Cir. 1944)).  Furthermore, although documents that contradict factual allegations generally control, *see Golden v. Bank of N.Y. Mellon*, No. 14-cv-00034-CMA-KMT, 2014 WL 4696407, at *3 (D. Colo. Sept. 19, 2014), the Court does not find that any statements in the exhibits attached to Plaintiffs' Amended Complaint directly contradict Plaintiffs' allegations regarding Defendant's intent.  Unlike paragraph thirty-four of Plaintiffs' Amended Complaint, the exhibits do not state that Defendant's "sole purpose" was to protect his reputation.  Because Defendant could have filed the CMB complaint with more than one purpose, the Court finds that the allegations in the documents attached to the Amended Complaint do not necessarily contradict the allegations in Plaintiffs' Amended Complaint.

[5]  In his Reply, Defendant argues that the Court need not presume the truthfulness of the Amended Complaint's factual allegations when resolving motions to dismiss for lack of subject matter jurisdiction.  Although Defendant's general assertion is correct, the Court does not find that statutory immunity is a jurisdictional question.  *See Mattson*, 929 P.2d at 41 (stating that statutory immunity from liability is an affirmative defense); *see generally Peterson*, 371 F.3d at 1201 (stating that the issue of qualified immunity is analyzed under Rule 12(b)(6) at the motion-to-dismiss stage).  Because the Court analyzes this issue under Rule 12(b)(6), the Court accepts Plaintiffs' allegations as true.

CMB complaint. Indeed, making a complaint with the intent to unfairly compete with another person by injuring their reputation demonstrates evil motive and intent to gain an unconscionable advantage.

At oral argument, Defendant contended that the allegations regarding Defendant's intent to injure Plaintiffs' reputations are merely a conclusory recitation of the elements of a claim, which are not sufficient to withstand a motion to dismiss. The Court disagrees. These allegations go beyond a mere "formulaic recitation of a cause of action's elements . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555 (2007). If these allegations merely pleaded that Defendant "acted in bad faith" or "acted with evil motive," the Court would agree with Defendant. However, the allegations specifically explain Defendant's evil motive—to unfairly compete with Plaintiffs. Therefore, the Court finds that these allegations go beyond merely reciting the elements of a cause of action.[6]

In sum, even assuming the statutory-immunity defense is properly resolved at the motion-to-dismiss stage, the Court finds Plaintiffs' allegations sufficient to withstand dismissal on statutory-immunity grounds. However, the Court notes that should Plaintiffs be unable to present evidence after discovery indicating that Defendant intended to seek an unconscionable advantage, acted dishonestly, or had an evil motive or intent to harm Plaintiffs, Defendant may be entitled to summary judgment.

---

[6] Moreover, the Court does not find that these allegations are entirely conclusory as to a civil conspiracy claim—the cause of action for which Plaintiffs make them. Under Colorado law, proving a civil conspiracy requires that two or more persons committed one or more unlawful overt acts in furtherance of an object to be accomplished. *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006). Therefore, a recitation of these elements would merely plead that Defendant and the coconspirator committed an unlawful act. Here, Plaintiffs' allegations specify that both parties agreed by words or conduct to damage Plaintiffs' reputations so that they could unfairly compete with Plaintiffs. Am Compl. ¶¶ 98–99. According to the Amended Complaint, they acted in furtherance of this conspiracy by filing false CMB complaints. *Id.* at ¶ 92, 101.

14

### III.     The Sufficiency of Plaintiffs' Allegations

Defendant next argues that even if he is not entitled to absolute or statutory immunity, Plaintiffs fail to state a claim on which relief may be granted.  Def.'s Mot. 12–17.  With the exception of their abuse-of-process claim, Plaintiffs assert that each of their claims sufficiently pleads a cause of action.  The Court finds that dismissal of the abuse-of-process claim is proper.  The Court will address each of Plaintiffs' remaining claims in turn.

### A.     Defamation

Plaintiffs' first cause of action asserts that Defendant's CMB complaint included false and defamatory statements about Beyer.  Under Colorado law, the elements of a defamation claim are:

> (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication.

*Williams v. Dist. Court, Second Judicial Dist., City & Cty. of Denver*, 866 P.2d 908, 911 n.4 (Colo. 1993); *see also Lawson v. Stow*, 327 P.3d 340, 345 (Colo. App. 2014).

Where a statement relates to a matter of public concern or where the statement is made to officials tasked with investigating the conduct at issue, the plaintiff must also prove falsity by clear and convincing evidence, actual malice, and actual damages.  *See Lawson*, 327 P.3d at 347 (holding that statements made to public employees charged with investigating allegations of child abuse were entitled to a heightened burden of proof).  At this stage, malice is the only element of Plaintiffs' defamation claim that Defendant contests.  Def.'s Mot. 13–14.  Plaintiffs do not dispute that they must prove Defendant made the complaint with malice, but they argue they properly pleaded this element.  Pls.' Resp. 7–8.  The Court holds that Plaintiffs' Amended Complaint contains sufficient factual allegations to infer that Defendant made the CMB complaint with actual malice.

15

Actual malice occurs when the declarant knows the statement to be false or acts in reckless disregard as to its truth or falsity.[7] *Dominguez v. Babcock*, 727 P.2d 362, 366 (Colo. 1986). Reckless disregard means a high degree of awareness of probable falsity or serious doubt as to the truth of the statement. *Id.* "That a reasonably prudent person would not have published the defamatory statement or would have investigated before publishing does not suffice. Rather, the plaintiff must demonstrate that the defendant in fact entertained serious doubts a to the truth of the statement . . . ." *Lewis v. McGraw-Hill Broad. Co.*, 832 P.2d 1118, 1123 (Colo. App. 1992). Therefore, although "malice cannot be inferred solely from the combination of the report being false and the failure of defendants in not checking all possible sources of corroboration or verification," *id.*, "a complete failure to investigate sources of corroboration of published statements may be evidence of actual malice." *Fink v. Combined Commc'n Corp.*, 679 P.2d 1108, 1111 (Colo. App. 1984); *see also Kuhn v. Tribune-Republican Publ'g Co.*, 637 P.2d 315, 319 (Colo. 1981) ("Actual malice may be inferred by the finder of fact if an investigation is grossly inadequate."). Importantly, "the question of malice is ordinarily one for the jury." *Dominguez*, 727 P.2d at 366.

Here, the Court holds that Plaintiffs sufficiently allege that Defendant acted with actual malice, because his investigation of the facts was grossly inadequate. Plaintiffs assert that before making the CMB complaint, Defendant did not review patient files, professional literature, or any other documents to determine the accuracy of the information in the complaint. Am. Compl. ¶¶

---

[7] Defendant argues in his Reply that Plaintiffs fail to plead malice, because Plaintiffs allege only self-interest, which does not constitute malice or ill motive. Def.'s Reply 7–9. However, "ill will and bad motive toward the plaintiff are not elements of actual malice." *Fink v. Combined Commc'n Corp.*, 679 P.2d 1108, 1111 (Colo. App. 1984). Although Defendant's alleged ill will and bad motive are pertinent to the statutory-immunity analysis, malice for purposes of Plaintiffs' defamation claim focuses entirely on whether the statements were made with knowledge or reckless disregard for falsity. *Id.*

29–31.  Accepting these allegations as true, Defendant "fail[ed] to pursue the most obvious available sources of possible corroboration or refutation."  *Kuhn*, 637 P.2d at 319.  Additionally, in deposition testimony that Plaintiffs attached to the Amended Complaint, Defendant states, "I did not do any investigation myself. This was all hearsay that Dr. Stewart told me . . . ."[8]  Ex. B. to Am. Compl. 23, ECF No. 18.  Although the court held in *Lewis* that the defendant did not need to conduct any additional investigation where his source was reliable and information from his source had been accurate in the past, 832 P.2d at 1123, Defendant's source was allegedly known to be in a financial and commercial dispute with Plaintiffs, and Defendant knew that the source may have been using Defendant to gain leverage in connection with this dispute.  Am. Compl. ¶ 22; Ex. B. to Am. Compl. 95.  Therefore, the Court does not find that Defendant's source of the information was sufficiently reliable to warrant not performing an investigation.

In sum, Plaintiffs have sufficiently alleged that Defendant's investigation of the facts in his CMB complaint was grossly inadequate, such that the Court can infer actual malice.[9]  Therefore, the Court holds that dismissal of Plaintiffs' defamation claim is improper at this stage.

---

[8] Although the deposition testimony attached to the Amended Complaint seems to indicate that Defendant may have spoken with other individuals, it does not indicate that those individuals advised Defendant on whether Beyer's conduct was ethical.  *See* Ex. B. to Am. Compl. 23–24.  Therefore, this does not contradict Plaintiffs' allegation that Defendant did not base his complaint on adequate information.

[9] It is certainly possible that at the summary-judgment stage, Plaintiffs will be unable to provide evidence that Defendant failed to conduct an investigation.  For instance, if Defendant submits undisputed evidence that he inquired into the ethical nature of Beyer's actions with three individuals who told him the procedure was likely unethical, this may require dismissal of Plaintiffs' defamation claim.  However, for purposes of the present Motion to Dismiss, Plaintiffs have sufficiently alleged the lack of any reasonable investigation, which is sufficient to state a defamation claim.

B.   Malicious Prosecution

Plaintiffs' third cause of action alleges a claim for malicious prosecution.  Am. Compl. ¶¶
80–86.  To prove this claim, Plaintiffs must show: "(1) the defendant contributed to bringing a prior
action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause;
(4) malice; and (5) damages." *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007).  Defendant argues
Plaintiffs fail to allege the first, third, and fourth elements.  Def.'s Mot. 15–17.  The Court will
address the sufficiency of each of the elements Defendant contests in turn.

Defendant asserts that because he did not have the power or authority to initiate the
proceedings, Plaintiffs fail to allege that he contributed to the license-suspension action.  *Id.* at 15.
In support of his argument, Defendant cites *Handy v. City of Sheridan*, No. 12-cv-01015-WYD-
KMT, 2013 WL 1232211 (D. Colo. Mar. 26, 2013) for the proposition that a plaintiff may not bring
a malicious-prosecution claim against an individual whose sole role was that of a witness.  Def.'s
Mot. 15.  However, this case does not support this proposition.  To the contrary, the court held that
the defendant "contributed to the criminal proceedings against [the plaintiff] by complaining to [the
detective] and allegedly overstating the seriousness of the alleged [action]." *Handy*, 2013 WL
1232211, at *10.  Similarly, Plaintiffs allege that Defendant filed a false complaint with the medical
board, which caused the board to investigate and hold a hearing regarding Beyer's license.  Am.
Compl. ¶¶ 80–81.  Moreover, Defendant acknowledges that Plaintiffs allege the CMB complaint was
used to "launch an investigation into Dr. Beyer's conduct."  Def.'s Mot. 11.  The Court finds these
allegations sufficient to establish that Defendant contributed to the license suspension action.

Defendant also contests Plaintiffs' allegations regarding a lack of probable cause.  Def.'s
Mot. 16–17.  Probable cause exists when the defendant "had reasonable grounds for the institution

18

of the action." *Bill Dreiling Motor Co. v. Herlein*, 543 P.2d 1283, 1285 (Colo. App. 1974). Thus, if the "facts and circumstances within the [defendant's] knowledge are sufficient to support a reasonable belief" of wrongdoing, probable cause exists. *Haskett v. Flanders*, No. 13-cv-03392-RBJ-KLM, 2015 WL 128156, at *10 (D. Colo. Jan. 8, 2015) (quoting *People v. Villiard*, 679 P.2d 593 (Colo. 1984)).

Here, the Court holds that Plaintiffs' allegations are sufficient to demonstrate a lack of reasonable grounds for the CMB complaint. Plaintiffs allege Defendant did not perform any investigation of the allegations he made. Am. Compl. ¶ 27; *id.* at ¶¶ 29–31 (asserting that Defendant did not review any medical records, professional literature, or other relevant documents). Additionally, although Defendant apparently spoke with another individual regarding the potentially unethical conduct, Plaintiffs allege this individual "made it a point not to even talk about [Beyer's conduct]." Ex. B. to Am. Compl. 24. Plaintiffs also allege Defendant would not have filed the CMB complaint if the coconspirator had not asked him to.[10] *Id.* at 16. The Court finds these allegations sufficient to plausibly state that Defendant lacked reasonable grounds to file the CMB complaint against Beyer.

Defendant also asserts Plaintiffs fail to allege malice. Def.'s Mot. 14–15. Malice in the context of a malicious-prosecution claim is different than that in the defamation context. In malicious-prosecution claims, malice means "any motive other than a desire to bring an offender to

---

[10] Although the deposition testimony attached to the Amended Complaint states that Defendant "genuinely thought it was unethical to switch cards," Ex. B. to Am. Compl. 22, this does not negate the allegations that Defendant did not have a reasonable belief of wrongdoing. Indeed, even if Defendant subjectively believed Beyer's conduct was unethical, a jury could still find that Defendant's belief was not objectively reasonable based on the facts and circumstances within Defendant's knowledge.

justice." *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646 (Colo. 1954); *see also Barton v. City & Cty. of Denver*, 432 F. Supp. 2d 1178, 1194 (D. Colo. 2006).  Determining whether malice exists "requires an inquiry about defendants' 'motive' in pursuing the alleged [] claim against plaintiff." *Atencio v. Soopers*, No. 11-cv-02195-PAB-MEH, 2012 WL 6043602, at *7 (D. Colo. Dec. 5, 2012).

Here, the Court holds Plaintiffs have sufficiently alleged that Defendant filed the CMB complaint with malice.  As explained more fully in the Court's discussion of statutory immunity, Plaintiffs allege Defendant filed the complaint to injure Plaintiffs' reputations, to unfairly compete with Plaintiffs, and to cause Plaintiffs' patients to terminate their contracts. Am. Compl. ¶¶ 92, 98, 99.  These allegations indicate Defendant filed the complaint with a desire other than to bring Beyer to justice for the potentially unethical conduct.  Specifically, it is reasonable to infer from the allegations that Defendant filed the complaint with at least a partial motive to gain a business advantage over Plaintiffs.

As is true with Defendant's entitlement to statutory immunity, it is certainly possible that at summary judgment or trial, Plaintiffs may not be able to present evidence indicating that Defendant filed the CMB complaint with an intent to injure Plaintiffs' reputations or unfairly compete with Plaintiffs.  If this is the case, dismissal of Plaintiffs' malicious-prosecution claim will likely be proper.  However, because Plaintiffs' Amended Complaint contains sufficient allegations to state a cause of action for malicious prosecution, the Court will not dismiss the claim at this time.

C.     Intentional Interference with an Existing Contractual Relation

Plaintiffs' fourth cause of action alleges that Defendant intentionally interfered with Plaintiffs' existing contractual relations.  Am. Compl.  ¶¶ 87–96.  Under Colorado law,

> [t]ortious interference with a contract requires that: (1) the plaintiff have a contract with another party; (2) the defendant knew or should have known of such contract's existence; (3) the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff; and (4) the defendant's actions caused plaintiff to incur damages.

*Telluride Real Estate Co. v. Penthouse Affiliates, LLC*, 996 P.2d 151, 155 (Colo. App. 1999). Defendant argues Plaintiffs fail to state a claim, because Plaintiffs have not alleged Defendant committed any wrongful conduct that induced a party to breach a contract.

However, for substantially the same reasons as the Court has already stated, Plaintiffs sufficiently allege wrongful conduct. Plaintiffs state that Defendant conspired with another individual to unfairly compete with Plaintiffs. Am. Compl. ¶ 98. In furtherance of the agreement, Defendant filed a false CMB complaint to "intentionally cause BLC's patients to terminate their contracts and prospective contracts with BLC." *Id.* at ¶¶ 40, 92. The Court finds this sufficient to allege that Defendant intentionally induced Plaintiffs' patients and service providers to breach their contracts.[11]

### D.    Civil Conspiracy

Plaintiffs' final cause of action alleges a claim for civil conspiracy. Am. Compl. ¶¶ 97–103. The elements of a civil conspiracy claim in Colorado are: "(1) two or more persons . . .; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more

---

[11] As the Court has previously stated, many of Plaintiffs' allegations seemingly contradict one another. For instance, the Amended Complaint states that Defendant's "sole purpose in filing his DORA Complaint was to protect himself, his reputation, and his career." Am. Compl. ¶ 34. This is contrary to the allegation that Defendant filed the complaint to unfairly compete with Plaintiffs and induce a breach of contract. Although the Court could reject Plaintiffs' allegations as not well-pleaded, the Court will not exercise its discretion to do so. However, should Plaintiffs be able to prove after discovery only that Defendant's sole purpose was to protect his reputation, the Court does not believe this will be sufficient to show a genuine issue of material fact as to whether Defendant intentionally induced Plaintiffs' patients and service providers to breach a contract.

unlawful overt acts; and (5) damages as the proximate result thereof." *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989) (quoting *More v. Johnson*, 568 P.2d 437, 439–40 (Colo. 1977)).  Similar to his argument on Plaintiffs' intentional-interference claim, Defendant argues Plaintiffs have not stated a claim for civil conspiracy, because there is no underlying wrongful or unlawful act.  Def.'s Mot. 18.  According to Defendant, because the filing of a meritless ethics complaint is the only alleged act, the Court should dismiss Plaintiffs' civil conspiracy claim.  *Id.*

The Court disagrees.  The Court has already held that Plaintiffs have stated a claim for defamation and malicious prosecution.  The acts underlying these causes of action are sufficient to satisfy the fourth element of Plaintiffs' civil conspiracy claim.  Because Plaintiffs allege Defendant and a coconspirator agreed by words and conduct to commit these acts together with the express purpose of unfairly competing with Plaintiffs, Plaintiffs have sufficiently alleged a civil conspiracy claim.

## CONCLUSION

In sum, the Court finds that dismissal of Plaintiffs' Amended Complaint is not proper at this time.  The Court holds that common-law absolute immunity does not apply to this case.  Additionally, Plaintiffs have alleged that Defendant lacked good faith when he filed the CMB complaint, which is sufficient to overcome the statutory immunity in Colo. Rev. Stat. § 12-36-118(3)(b).  Finally, with the exception of the abuse-of-process claim, each of Plaintiffs' causes of action plausibly states a claim on which relief may be granted.  By agreement of the parties, the Court dismisses Plaintiffs' abuse-of-process claim.  Accordingly, Defendant's Motion to Dismiss [filed December 23, 2016; ECF No. 12] is **granted in part and denied in part**.

Entered and dated at Denver, Colorado, this 2nd day of March, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge