1

```
 1            IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
    Case No. 16-cv-03099-MEH
 3   _____

 4  BEYER LASER CENTER, LLC, et al.,

 5      Plaintiffs/Counter Defendants,

 6  vs.

 7  MATEJ POLOMSKY,

 8      Defendant/Counter Claimant.
    _____
 9

10          Proceedings before MICHAEL E. HEGARTY, United

11  States Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 1:00 p.m., April 15, 2019,

13  in the United States Courthouse, Denver, Colorado.

14  _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                          APPEARANCES

19          SCOTT BRENNER and GREGORY TIEMEIER, Attorneys at

20  Law, appearing for the Plaintiffs.

21          EMILY KEIMIG and BETH LENNON, Attorneys at Law,

22  appearing for the Defendant.

23  _____

24                       DISCOVERY CONFERENCE

25
```

2

```
 1                    P R O C E E D I N G S
 2            (Whereupon, the within electronically recorded
 3   proceedings are herein transcribed, pursuant to order of
 4   counsel.)
 5            THE COURT:  Good afternoon.  Case Number
 6   16-cv-3099.  Make your appearances, please, plaintiff.
 7            MR. BRENNER:  Scott Brenner and Greg Tiemeier for
 8   the plaintiff.
 9            THE COURT:  Thank you.  And the defense.
10            MS. KEIMIG:  Good afternoon, Your Honor.  Emily
11   Keimig and Beth Ann Lennon on behalf of Dr. Polomsky.
12            THE COURT:  Okay.  So if the issue is just
13   defendant not wanting to identify documents that they believe
14   are illegible or somehow spoliated, I need to hear from the
15   defendants.
16            MS. KEIMIG:  So, Your Honor, this is Ms. Keimig.
17   I -- a little bit of background.  What plaintiffs are asking
18   us to do is -- what they're asking for from you, Your Honor,
19   is discovery related to their own documents.  I am not sure
20   the entire scope, because Mr. Brenner's e-mail doesn't limit
21   it.  I'm not sure the entire scope that they are requesting,
22   i.e., are they asking for every single document that we have
23   that we've received from them and that is illegible, because
24   that is literally hundreds of thousands of pages of
25   documents.
```

3

```
 1              With respect to the specific 113 patient files that
 2     we have and that we have identified as patients who were
 3     treated with a PTK card, we asked counsel to go through
 4     those.  We received all those documents from them.  We
 5     compiled them into files, we Bates-labeled them and produced
 6     them back to plaintiff and we asked if they would go through
 7     each of those 113 patient files and tell us whether we had
 8     everything that they had.
 9              The reason we asked for that is because at various
10     terms in this case we have been given entirely new
11     information about the location and means of maintenance of
12     various files, so we wanted to be sure that what we had,
13     including illegible documents, was the same as what they had.
14              And if for those 113 patients they had a document
15     that they thought might be a legible copy of what we had as
16     an illegible copy, we obviously wanted to have that legible
17     copy, number one, to have the information and, number two, to
18     ascertain whether the illegible copy that we had became
19     illegible in the scan process.
20              We also wanted to know, wholly apart from the
21     illegible document problem, whether there were entirely
22     different or new documents that they had in their patient
23     files for these 113 patients that we did not have.  So -- and
24     plaintiffs refused to do that, which is fine, but they know
25     what we have and they can tell what's illegible.
```

1       I think what they're asking us to do is go through
2  those 113 files and give them those Bates labels, which, you
3  know, if it's illegible, query how much -- how hopeful that
4  is going to be them.  What's helpful is the context, and that
5  is the way we produced the files back to them with the Bates
6  labels because that shows what file our record indicate that
7  illegible document is connected to.
8       But the problem is not limited to, or our request
9  to them was not limited to tell us if you have legible copies
10 of illegible documents.  Our request was, please go through
11 these 113 patient files that we have now been able to compile
12 from -- I think at this point it's like seven or eight
13 different productions, most of which are not OCR or
14 Bates-labeled -- tell us of these 113 patients that we've
15 been able to piece together files for if we have everything
16 that you have, if we have the complete file.
17      We can't possibly identify documents that we don't
18 know exist.
19      THE COURT:  Okay.  Well, hold on, let me cut you
20 short.  I'm sure what Mr. Brenner is worried about and what
21 is a fair question to ask is this.  If the defense at any
22 time in this case intends to ask for any consequence for
23 spoliated or illegible documents, they would have to show me
24 the proof.  All he is asking for right now is what is that
25 proof.

5

1         So if -- I will not entertain any motion for any
2   consequence based on spoliated or illegible documents unless
3   the defense shows its proof right now as to what it would
4   rely on.  If you don't intend to do that, then I agree, this
5   is irrelevant; but if you intend to do that, I'm requiring
6   production of the documents or a listing of the documents you
7   would at some point in this case use to ask for some kind of
8   relief related to spoliated or illegible documents.  Is that
9   what you're --
10        MS. KEIMIG:  So they have --
11        THE COURT:  Go ahead.
12        MS. KEIMIG:  They have all of that.  They have all
13  the documents, including their -- the illegible documents.
14        THE COURT:  No, I know, but I think Mr. Brenner
15  wants to know what you consider to be a spoliated or
16  illegible document so that he knows in advance prior to
17  facing any adverse jury instruction, a striking of any claim,
18  any other request for relief that you would make what it is
19  that you're going to be relying on in making any such motion
20  so that he can mitigate damages, and I think it's a fair
21  request.
22        So you can either choose to provide a listing or
23  whatever of the evidence you would throw to the Court to ask
24  for any such relief, because you would have to do that.  I
25  would have to have a factual basis for making any order in

```
 1   that regard.  All he is asking for, I think, is to show the
 2   proof right now.  Am I correct, Mr. Brenner?
 3            MR. BRENNER:  Yes, we would like the Bates number
 4   of any document they think is illegible, and then with
 5   respect to documents that they think are missing we would
 6   like them to say, We think, you know, the operative report
 7   from patient ABC is missing or the price sheet from patient
 8   XYZ is missing.
 9            THE COURT:  Understand.  So are we clear?
10            MS. KEIMIG:  Can you give us just a moment, Your
11   Honor?
12            THE COURT:  Yes.  So this is kind of a Rule
13   26(a)(1) disclosure requirement in advance of the filing of
14   any motion for relief based on spoliation or illegible
15   documents.
16            (Pause)
17            MS. LENNON:  Your Honor, this is Ms. Lennon.  I
18   just wanted to clarify, we received over 100,000 pages of
19   medical records from opposing counsel, electronic copies of
20   medical records from Mr. Brenner and his client without Bates
21   labels.  We have plugged them into our document software and
22   Bates-labeled them in the order that we received them and
23   intend on relying on all of them for purposes of filing our
24   motion regarding spoliation and for sanctions as a result of
25   that, although obviously we don't currently intend to attach
```

```
 1   all 100,000-plus pages as an exhibit.
 2             So just to clarify, are you ordering us to provide
 3   them our Bates-labeled copies back to them or are you
 4   requesting or ordering us to provide them copies of the
 5   exhibits we intend to use for that motion before we file the
 6   motion?
 7             THE COURT:  I would say any evidence you're going
 8   to rely on to get an order from the Court that puts a penalty
 9   of some kind on the plaintiff, you need to provide that in
10   advance.  That's what I'm saying.
11             MR. BRENNER:  And to clarify, Your Honor, and
12   identify which ones they believe are illegible or missing?
13             THE COURT:  Well, I'm saying that -- I will not put
14   any consequence on the plaintiff unless the evidence was
15   shown to the plaintiff in advance to give them an opportunity
16   to mitigate any penalty.  So whatever it is that the
17   defendant would rely on in making any such motion needs to be
18   identified now, and it doesn't have to be today or this week
19   or this month even; just in a reasonable time period.  So
20   it's just showing those cards before you play them.
21             MR. BRENNER:  Your Honor, our -- our motion for
22   summary judgment deadline is a month from today, I believe.
23   So it would be nice to get that -- it seems reasonable to get
24   that information within the next, say, by the end of the
25   month, but it seems like it could be produced sooner.
```

8

```
 1            During the inspection of BLC, Ms. Lennon told me
 2   that 25 percent of the documents were illegible, or at least
 3   of their relevant ones were illegible, so clearly they've got
 4   some -- some accounting of which ones they think are
 5   illegible.
 6            MS. KEIMIG:  Your Honor, that's correct.  This is
 7   Ms. Keimig speaking.  That's correct, but those are hard copy
 8   documents.  It's the electronic documents that we have in the
 9   hundreds of thousands of pages.
10            THE COURT:  Right.  Well, yeah, I -- whatever -- I
11   will only consider documents, allegations of documents, if
12   the plaintiff is on notice of precisely what those alleged
13   missing, spoliated, destroyed, illegible documents are in
14   advance.
15            MR. BRENNER:  Thank you, Your Honor.
16            THE COURT:  Okay.  All right, are we off the
17   record?
18            MR. BRENNER:  Yes.
19            MS. KEIMIG:  Thank you, Your Honor.
20            THE COURT:  All right.  Thank you, you guys, take
21   care.
22            (Whereupon, the within hearing was then in
23   conclusion at 1:12 p.m.)
24
25
```

```
1                    CERTIFICATE OF TRANSCRIBER
2    I certify that the foregoing is a correct transcript to the
3    best of my ability to hear and understand the audio recording
4    and based on the quality of the audio recording from the
5    above-entitled matter.
6
7    /s/ Dyann Labo                         April 30, 2019
8    Signature of Transcriber                Date
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```