## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:16-cv-03099-MEH

BEYER LASER CENTER, LLC, a Colorado company
and DR. CRAIG F. BEYER, a Colorado resident,

      Plaintiffs,

v.

MATEJ POLOMSKY, M.D. a North Carolina resident,

      Defendant.

_____

## DR. POLOMSKY'S MOTION FOR DISCOVERY SANCTIONS AND TO COMPEL PLAINTIFFS' COMPLIANCE WITH THEIR OBLIGATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE
_____

Defendant Matej Polomsky, M.D. ("Dr. Polomsky" or "Defendant") by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 16(f), Fed. R. Civ. P. 26(e), Fed. R. Civ. P. 26(g), and Fed. R. Civ. P. 37, hereby moves for sanctions and to compel Plaintiffs' compliance with their discovery obligations under the Federal Rules of Civil Procedure.

Plaintiffs' flagrant disregard for their discovery obligations throughout these proceedings may well be unprecedented in this district, at least among published cases and particularly for a represented party. This willful and repeated refusal to properly engage in discovery has been ongoing since initial disclosures were exchanged in May of 2017 and continues to this day, more than a year after discovery was to have closed. Dr. Polomsky has not only been substantively prejudiced by Plaintiffs' unapologetic disregard for the Federal Rules as he prepares for trial in this case, Plaintiffs' discovery misconduct, including their repeated disregard for this Court's

Orders, has directly caused Dr. Polomsky to incur, otherwise entirely unnecessary, attorneys' fees at a rate that is shocking. Sanctions are necessary as a matter of equity and required as a matter of law.

## I.      Certificate of Conferral.

Prior to filing the present motion, counsel for Dr. Polomsky attempted to confer with counsel for Plaintiffs regarding the issues raised herein. Ultimately, Plaintiffs refused to address any of the substantive questions raised by counsel for Dr. Polomsky and simply indicated that they "disagree with [Dr. Polomsky's] characterization of the facts and the law," and oppose the relief requested herein.

## II.      Legal Standard.

The Federal Rules are clear – where discovery abuse has occurred, the party engaging in such abuse (and/or his attorneys) should be sanctioned and, as part of those sanctions, the offending party <u>must</u> pay the attorney's fees and costs caused by that abuse. Indeed, this bedrock of the civil judicial system is so foundational that this requirement is found not just in one place within the Rules, but throughout.

For example, Fed. R. Civ. P. 37(a)(5) requires a party who does not properly respond to discovery until after Court intervention "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Accord* Fed. R. Civ. P. 37(b)(2)(C) (requiring the Court to order a disobeying party or his attorneys "to pay the reasonable expenses, including attorneys' fees, caused by the failure" to obey a discovery order). Similarly, Fed. R. Civ. P. 26(g)(1) requires "every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection" to "be signed by at least one attorney of record in the attorney's own name" certifying "that to the best of the person's knowledge, information and belief *formed after a*

2

*reasonable inquiry*: with respect to a disclosure, it is complete and correct as of the time it is made; and with respect to a discovery . . . response or objection, it is" both "consistent with these rules and warranted by existing law" and "not interposed for any improper purpose. . ." (emphasis added). "If a certification violates this rule without substantial justification, the court, on motion or on its own, **_must_** impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." *Id.*

Fed. R. Civ. P. 16(f)(1)(C) provides that "on motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Failing to properly engage in discovery during the timeframe set in the Scheduling Order falls squarely within the conduct addressed under this rule. *Mishler v. Dillon Companies, Inc.,* No. 16-cv-01397-MEH, 2018 WL 2131509, *3 (D. Colo. May 9, 2018). Under Rule 16(f), "the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

In addition to the mandatory recovery of attorneys' fees and costs, the Federal Rules contemplate additional sanctions when necessary to deter the misconduct of the offending party. Appropriate sanctions include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (v) rendering a

default judgment against a disobedient party; or (vii) treating as contempt of court
the failure to obey any order. . .

Fed. R. Civ. P. 37(b)(2)(A). Rule 37 also makes clear that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" and sanctions should result. Fed. R. Civ. P. 37(a)(4). A party's discovery obligations are ongoing and the Federal Rules impose an affirmative obligation to supplement disclosures and responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect. . ." Fed. R. Civ. P. 26(e).

### III.    Analysis.

The prejudice to Dr. Polomsky occasioned by Plaintiffs' flagrant and ongoing discovery abuse cannot be overstated.[1] In addition to incurring excessive and otherwise entirely unnecessary attorneys' fees addressing this misconduct, Dr. Polomsky has essentially been left fighting blindfolded throughout these proceedings. Despite a trial date less than two months away, Plaintiffs continue to willfully ignore this Court's discovery orders.[2] Sanctions are not only appropriate, they are required.

### A.    Plaintiffs' discovery misconduct has spanned all of discovery in these proceedings.

To date, the Court has held thirteen (13) hearings, lasting more than seventeen (17) cumulative hours on the record, in these proceedings. Ten (10) of those hearings, and a majority

---

[1] Plaintiffs' discovery abuse has not been limited to any discrete issue and is certainly not limited to the most recent misconduct addressed below; however, the most recent evidence of Plaintiffs' clear and utter disregard for the Federal Rules, occurring just weeks before trial is to commence, has hastened the need to file this motion, which has been a long time coming. To be clear, Dr. Polomsky is entitled to recover all of his attorneys' fees and costs occasioned by *all* of Plaintiffs' discovery misconduct and is specifically requesting such relief herein.

[2] The most recent flippant disregard for the Court's Orders was occasioned this week, when Plaintiffs missed the Court's October 7, 2019, deadline for identifying their intended expert.

of those hours, have been the direct result of Plaintiffs' failure to comply with their discovery obligations under the Federal Rules of Civil Procedure.[3] In nearly every one of the discovery conferences held by this Court in these proceedings, Plaintiffs have been ordered to produce documents or materials responsive to Dr. Polomsky's written discovery requests that had previously been withheld. This alone triggers the mandatory attorneys' fees provisions in Fed. R. Civ. P. 37(a)(5)(A). However, Plaintiffs' discovery abuse goes well beyond a failure to provide proper discovery responses without judicial intervention and much of this abuse has already been brought to the Court's attention.[4] Unfortunately, Plaintiffs' discovery abuse continues to this day.

---

[3] As contemplated under the Local Rules, a more comprehensive recitation of Plaintiffs' discovery abuse throughout these proceedings will be submitted, via affidavit, in conjunction with Dr. Polomsky's specific fee request.

[4] Since their first responses were received by Dr. Polomsky on April 25, 2018, Plaintiffs' written discovery responses have been replete with improper boilerplate objections that fail to comply with the Federal Rules of Civil Procedure. *See, e.g., Kissing Camels Surgery Center, LLC, v. Centura Health Corp.,* No. 12-cv-03012-WJM-NYW, 2016 WL 277721, *2 (D. Colo. Jan. 22, 2016) ("Boilerplate objections are improper. The responding party has the obligation to explain and support its objections." (internal citations omitted)). Indeed, Fed. R. Civ. P. 26(g) specifically prohibits the "abusive practice of objecting to discovery requests reflexively – but not reflectively – and without a factual basis" *Bottoms v. Liberty Life Assur. Co. of Boston,* No. 11-CV-01606-PAB-CBS2011 WL 6181423, *7 (D. Colo. Dec. 13, 2011) (internal citations and quotations omitted). Similarly, under the plain language of the Rules, at a minimum, "an objection must state whether any responsive materials are being withheld on the basis of the objection." *See, e.g.,* Fed. R. Civ. P. 34(b)(2)(B). Despite several objections on the basis of "privilege" in Plaintiffs' discovery responses, they have provided no privilege log in these proceedings to date. *See, e.g., Pinon Sun Condominium Assoc., Inc. v. Atain Specialty Insurance Co.,* No. 17-cv-01595-CMA-MJW, 2018 WL 4697311, *2 (D. Colo. June 11, 2018) (explaining that when a party objected to discovery requests "on the basis [of] the work product doctrine and attorney-client privilege" that party "assumed the burden of showing that the privileges applied. . . In failing to provide a privilege log [that party] could not, and did not, meet that burden."). Indeed, all the way to, and through, the hearings the Court held in these proceedings, including the one held just days before Plaintiffs' most recent supplements, Plaintiffs have represented to the Court that, irrespective of their objections, nothing was being withheld on privilege grounds. As discussed below, Plaintiffs appear to have reversed this position in their September 27, 2019, Supplemental Responses.

5

**B.**    **Plaintiffs' discovery misconduct continues to this day.**

While preparing the materials necessary for the Final Pretrial Order in this case, counsel for Dr. Polomsky discovered that Plaintiffs had failed to fully respond to a number of Dr. Polomsky's written discovery requests. At Plaintiffs' insistence, counsel for Dr. Polomsky requested a discovery conference with the Court to address these matters, which was initially scheduled for September 16, 2019. At that conference the Court determined that an in-camera interview with Plaintiffs' former counsel, who had sued Plaintiffs in litigation previously undisclosed by Plaintiffs (despite an explicit request for such information), was necessary to address one of the issues raised by Dr. Polomsky. Thus, the discovery hearing was continued to September 18, 2019, and an in-camera interview was held by the Court on September 17, 2019. Between the September 16, 2019, and September 18, 2019, hearings, Plaintiffs raised (for the first time and without prompting by the Court or Dr. Polomsky) issues pertaining to whether documents, which apparently had been in Plaintiffs' possession since at least the summer of 2018, were protected by the attorney/client privilege, as these documents consist of communications between Dr. Beyer and a personal friend, Jim Martin, who had attended law school but was not a licensed attorney.

During the discovery hearing on September 18, 2019, which originally was scheduled to address Plaintiffs' failure to identify over 20 different prior lawsuits Plaintiffs had been involved in (including the *Berg Hill* litigation prompting the September 17, 2019, in-camera interview of Mr. Berg), Mr. Brenner, counsel for Plaintiffs, informed the Court (and counsel for Dr. Polomsky) *for the first time* that the materials Mr. Brenner received from Plaintiffs' counsel in *Beyer I* in the

summer of 2018 were the source for the email correspondence between Jim Martin and Dr. Beyer that had been provided to the Court (but not to Dr. Polomsky) on September 17, 2019. [5]

Although some, if not all, of the correspondence between Mr. Martin and Dr. Beyer was clearly responsive to Dr. Polomsky's written discovery requests, these materials were not provided to Dr. Polomsky until several days later, on September 23, 2019 and only after the Court issued an Order causing their production (and thereby curing Plaintiffs' outrageous attempts to engage in *ex parte* communication with this Court). Nor were they ever identified by Plaintiffs on a privilege log. Moreover, what was made clear during the September 18, 2019, and September 23, 2019 hearings, as well as during counsel's conferral concerning these documents, is that neither Plaintiffs nor their counsel have, even to this day, conducted a thorough search of the materials in their possession, identified all responsive documents, and either produced these materials or, if the materials are relevant and responsive but being withheld on privilege grounds, identified those materials on a privilege log. Indeed, though Plaintiffs *sua sponte* and without explanation, provided the documents (un-Bates labeled) to the Court and urged their relevance in connection with Dr. Polomsky's Abuse of Process claim in the present lawsuit, even those documents have not been produced in discovery or identified on a privilege log. While this series of events would have, even more than a year ago, posed very troubling questions about Plaintiffs' fulfillment of their discovery obligations, it is clear at this juncture that Dr. Polomsky ***never*** would have been provided this evidence if his counsel had not discovered that Plaintiffs had withheld information

---

[5] These documents were filed with the court under Level 2 Restriction, permitting the Court to review the documents upon which Plaintiffs relied for their arguments at the time, but withholding them from Dr. Polomsky.

and documents that are responsive to discovery requests and patently relevant to a number of factual and legal questions in this case.

        i.      <u>Plaintiffs' September 27, 2019, Supplemental Responses</u>.

At the end of the day on Friday, September 27, 2019, Plaintiffs provided the supplemental discovery responses that they had indicated to both counsel for Dr. Polomsky and the Court would be forthcoming days earlier.[6] In these "Supplemental Responses" Plaintiffs again make clear their complete disregard for their discovery obligations. Specifically and with regard to prior litigation, instead of reviewing the materials in their possession and identifying what needed to be produced and what in their possession was responsive but (arguably) privileged and, thus, needed to be identified on a privilege log, Plaintiffs pulled and produced public records concerning *some* of the litigation *counsel for Dr. Polomsky had found* and produced those public records, along with an unrelated declaration (discussed further below), all of which clearly **had not** been part of the file Plaintiffs received from Berg Hill or otherwise produced as a result of a review of Plaintiffs' personal files. Plaintiffs also updated their responses to repeatedly state that "to the extent *Dr. Polomsky* believes any responsive documents were identified in the privilege logs produced in the First Lawsuit, Plaintiffs incorporate by reference the privilege logs *produced in the First Lawsuit. See also* ECF No. 186." Ex. A (emphasis added). This statement is absurd.

Plaintiffs have repeatedly represented to the Court (both in defense of Dr. Polomsky's arguments and affirmatively in support of Plaintiffs' arguments) that *Beyer I* (a/k/a the "First

---

[6] As raised in the September 23, 2019, hearing, when counsel for Dr. Polomsky attempted to confer with counsel for Plaintiffs concerning their obligations to supplement their discovery response evidenced by what had independently been discovered by Dr. Polomsky's counsel earlier that month, Mr. Brenner assured counsel for Dr. Polomsky, just two hours before that hearing (the third, and final, hearing in less than a week) was scheduled to commence, that Plaintiffs would "review and update" their discovery responses by Tuesday, September 24, 2019.

Lawsuit") was an entirely different case and should have no import in the matter at bar. In light of this position (and even if there were some precedent establishing that a privilege log composed by a different firm in a different case could merely be "incorporated by reference"—which there is not), it cannot be that a privilege log from *Beyer I* may simply be "incorporated by reference" in the present proceedings. Indeed, the language used by Plaintiffs in their attempt to do so suggests that *Dr. Polomsky* should conduct a review for responsiveness of evidence *he does not even have,* and then defer to privilege logs composed by lawyers other than those representing any party in the present litigation. That is simply and entirely nonsensical, and would make *Plaintiffs'* discovery obligations Dr. Polomsky's obligations, which obligations Dr. Polomsky could never perform, *because he does not have custody of the documents at issue.* Plaintiffs' conduct in this regard is the most recent in a pattern, wherein Plaintiffs seek to shift their obligations to Dr. Polomsky, even though Dr. Polomsky is undisputedly incapable of bearing those obligations, *because he does not have the documents*.

Throughout the parties' conferral on this issue, Mr. Brenner has maintained that Plaintiffs' discovery obligations were satisfied by Mr. Brenner searching one subfolder of the materials Plaintiffs' prior counsel had provided Mr. Brenner last summer. The issue at hand is that Plaintiffs' obligation *back in the summer of 2018,* when Plaintiffs' present counsel received those documents from Plaintiffs' counsel in *Beyer I,* was to review *all of the documents*, ascertain whether they were responsive to *any* of Dr. Polomsky's written discovery requests, and, if so, either produce them or log them on a privilege log *in these proceedings*. Mr. Brenner's responses to the conferral

efforts of Dr. Polomsky's counsel clearly demonstrates the ongoing nature of this failure.[7] While Plaintiffs' failure is wide-reaching, one irrefutable and striking example of their failure is the fact that Plaintiffs *still have provided no privilege log whatsoever in the case at bar.*

To be clear, the fact that counsel for Plaintiffs *specifically represented* to the Court that there were responsive documents they had received from Berg Hill last summer that Plaintiffs had failed to produce and/or identify on a privilege log, while concerning in and of itself, served to illustrate a larger problem which Dr. Polomsky had hoped that Plaintiffs were taking the time to rectify. Specifically, some or all of those same documents that Mr. Brenner received from Mr. Berg were correspondence to or from Dr. Beyer which, therefore, presumably were already in Plaintiffs' possession. This demonstrates a failure to search for responsive documents that extends beyond the failure to review the documents received from Berg Hill last summer, and it again raises a problem for Dr. Polomsky in that he does not know what he does not know, because it is clear that Plaintiffs have either withheld relevant evidence or willfully failed to manage the discovery process such that Dr. Polomsky could avail himself of the due process contemplated in the Rules.

---

[7] Based upon Mr. Brenner's repeated representations over the last two weeks that supplemental discovery responses would be forthcoming and requests for additional time to provide those supplements, it was Dr. Polomsky's assumption that Mr. Brenner was actively reviewing all of the materials Plaintiffs had failed to review before discovery (by Dr. Polomsky) of the *Berg Hill* litigation and would be supplementing Plaintiffs' discovery responses accordingly. The fact that Mr. Brenner finally got around to reviewing *one subfolder* within those materials (and is still claiming privilege with regard to some or all of even the limited documents Mr. Brenner reviewed but refuses to provide a privilege log), still demonstrates a complete failure to comply with Plaintiffs' obligations under the Federal Rules.

10

ii.     <u>The Declaration</u>.

Contained within the limited new materials *provided by Plaintiffs for the first time on September 27, 2019,* was a **June 27, 2018** Declaration obtained *by Plaintiffs for the purpose of these proceedings* from Karen McGovern, the Director of Legal Affairs for the Colorado Department of Regulatory Agencies ("DORA") - the agency that investigated Dr. Stewart's report concerning Dr. Beyer's use of PTK cards to perform PRK/LASIK procedures and recommended to the Colorado Medical Board ("CMB") that Dr. Beyer's license be suspended as the result of that investigation. Ex. B.[8] During the CMB's year-long investigation and at the time of the resultant suspension of Dr. Beyer's medical license - which investigation and suspension **Plaintiffs** have explicitly and unequivocally put at issue in this lawsuit - Ms. McGovern was the Program Director for the CMB.[9] *Id.* Despite the fact that Plaintiffs have had this Declaration for more than a year, and before the last ***nine*** hearings that the Court has held in these proceedings (including the September 12, 2018, hearing in which the Court **specifically ordered** that Plaintiffs "subpoena the records from DORA" that Dr. Polomsky had requested in written discovery after Plaintiffs had suggested that they did not have them), Plaintiffs waited until just ***nine weeks*** before trial (and more than a year after discovery closed) to produce this Declaration.

There can be no dispute that Ms. McGovern's Declaration should have been produced. In March 2018, Dr. Polomsky requested "any and all documents (including but not limited to . . . written statements . . .) that refer to or reflect communication(s) by and between you or anyone

---

[8] Although Plaintiffs have yet to produce any accompanying correspondence indicating when, exactly, this Declaration was received by them, presumably it was at or near the time it was signed by Ms. McGovern.
[9] Indeed, Ms. McGovern is the individual who signed the Order of Suspension issued by the CMB on March 13, 2015, a copy of which *Plaintiffs* have attached as evidence in support of their Motion for Summary Judgment. Doc. 151-4.

acting on your behalf and any third parties (other than your counsel) regarding the allegations, or

the facts underlying the allegations contained in your Complaint or Answer to Defendant's

Counterclaims." Ex. A (RFP 2). Dr. Polomsky also requested "any and all statement(s), written or

recorded, sworn or unsworn, relating to the events alleged in your Complaint, and any amendments

thereto, in the possession of you or your attorneys and taken from any person whom you assert has

knowledge of facts related in any way to your claims or defenses" and also *specifically* requested

"all documents or correspondence you sent to or received from DORA . . . including but not limited

to all materials . . . sent to or received from DORA following [the CMB's April 2015] hearing

(including by way of example but not by way of limitation, correspondence regarding your efforts

to have all references to your suspension removed from DORA's website." *Id.* (RFP 4 & 7). In

May 2018, Dr. Polomsky also *specifically* requested "any and all documents reflecting

communication between you, or anyone acting on your behalf, and the Colorado Medical Board

or DORA sent or received between April 10, 2015, and the present." Ex. C (RFP 22). ***These***

***specific discovery requests*** were among those addressed by the Court in hearings in May 2018,

June 2018, and September 2018, and the Court made clear that, even if these materials ultimately

were inadmissible, they were relevant, responsive, and needed to be produced.[10]

Not only has Plaintiffs' failure to produce Ms. McGovern's Declaration ***during discovery***

prejudiced Dr. Polomsky's ability to prepare for trial, this document *specifically refutes*

representations Plaintiffs have made and continue to make to the Court throughout these

---

[10] For example, after Plaintiffs refused to substantively respond to these discovery requests improperly claiming the requests were "irrelevant, overly broad, unduly burdensome, and not proportional to the needs of this action," *Bottoms,* 2011 WL 6181423 at *7, the Court specifically ruled on June 26, 2018, that ***a response was required*** and if "the plaintiff wants to have the DORA records excluded, they will need to file a Motion in Limine." [Doc. 112].

proceedings (*after* having received a *sworn statement* memorializing the state's position to the contrary), including in briefing on dispositive motions presently pending before the Court. We now know that Ms. McGovern rejected Plaintiffs' proposed language that would have provided some basis for the (erroneous) story they have told about the public record of Dr. Beyer's suspension by the CMB. *Id.* Moreover, Ms. McGovern explicitly informed Plaintiffs *back in June of 2018* that it was the State's position that Dr. Polomsky's report to the CMB is "specifically not admissible in a civil suit."[11] *Id.* As Plaintiffs have already repeatedly admitted, without this report, which the state has said in sworn testimony is inadmissible, Plaintiffs have no claims against Dr. Polomsky.

Similarly and as noted above, this Declaration appears to put directly at issue the veracity of Plaintiffs' repeated representations to the Court throughout these proceedings concerning the import of Plaintiffs' (evidently successful, though unlawful because it was during the pendency of this litigation) attempts to "remove"[12] all public records (other than the lawsuits filed by Plaintiffs) related to the CMB's suspension of Dr. Beyer's medical license. Plaintiffs' counsel have made abundantly clear over the last two years that they consider their ability to make their oft-repeated argument - that, because there currently is no reference to the suspension of Dr. Beyer's medical license on the CMB's website (and evidently, notwithstanding the fact that at the time this action was brought by Dr. Beyer, there **was** a reference to, and indeed copies of, the suspension on the

---

[11] C.R.S. 12-36.5-102(7)(a) **specifically defines** "records," as used in the statutes cited by Ms. McGovern, to include, among other things, "any . . . complaint, response, or correspondence related to the complaint or response."

[12] The public record of Dr. Beyer's suspension was published on the state's website and, as such, true "removal" of it from public view, is impossible. *See* Doc. 152-21.

state's website), it never happened - to be pivotal to one or more claim(s) in these proceedings, going so far as to include a statement to this effect in Plaintiffs' alleged "material facts" in Plaintiffs' recent Motion for Summary Judgment. *E.g.* Doc. 151. Ms. McGovern's Declaration, which was *signed in June of 2018*, particularly when compared to the draft declaration that Plaintiffs' counsel Vincent Wegher attempted to get her to sign earlier that year, specifically demonstrates that though Plaintiffs attempted to get Ms. McGovern to agree with their theory in this regard, she refused. *Compare* Ex. B *with* Ex. D. Indeed, she substituted language for that in Plaintiffs' draft which arguably calls into question the propriety of the public record having been altered at all—an alteration effected by Plaintiffs' legal counsel *during the course of this litigation*.[13]

Simply put, Plaintiffs hid evidence that drew into question the veracity of their repeated representations to the Court, throughout these proceedings, concerning (according to Plaintiffs) an issue of paramount importance. While clearly related to Dr. Polomsky's Spoliation Motion (and what we now know, based upon Ms. McGovern's Declaration, are gross misrepresentations made to the Court by Plaintiffs' counsel in response to that Motion), Plaintiffs' mantra about public records, inadmissible records, the significance of the Suspension and related proceedings, etc. - all

---

[13] Plaintiffs' counsel's actions in effecting the alteration of the public record during the pendency of this litigation is a matter set forth in Dr. Polomsky's Motion for Sanctions for Spoliation [Doc 152]. Insofar as the Court has queried the possible prejudice to Dr. Polomsky of this and other *per se* spoliation by Plaintiffs, Ms. McGovern's Declaration is of critical importance. Plaintiffs' repeated and emphatic assertions about the significance and admissibility of certain CMB-generated documents (both those that were public record at the time this case was filed and those that were not), coupled with what Dr. Polomsky now recognizes as Plaintiffs' withholding of critical evidence bearing directly (and arguably adversely) on Plaintiffs' basic theory about the CMB-generated documents, illustrates that Dr. Polomsky has been deprived—until weeks before trial—of evidence Plaintiffs have made central to their case.

of which are based upon a theory that Ms. McGovern would not endorse - are matters Plaintiffs have urged at every turn are somehow dispositive of most or all of the issues in this case. The fact that Dr. Polomsky may disagree is of no moment. Plaintiffs brought this lawsuit and have consumed innumerable court hours and written pages professing the significance of these very issues, all while failing to disclose damning evidence that draws into question the legitimacy of the theories they rely upon.

## IV.      Conclusion.

Sanctions are not only appropriate, they are required. Plaintiffs must be ordered to pay the attorneys' fees and costs directly attributable to Plaintiffs' discovery abuse and, in light of the ongoing and egregious nature of that abuse, dating back well over a year, the most severe sanctions are appropriate – dismissal with prejudice of all of Plaintiffs' claims against Dr. Polomsky in addition to the award of fees to Dr. Polomsky. Plaintiffs' misconduct does not go to tangential or remotely relevant matters; their misconduct was designed to deprive Dr. Polomsky of critical and arguably dispositive evidence that adversely bears upon Plaintiffs' entire case.[14]

Even if the Court were to conclude there is some remedy less than dismissal that would properly cure the harm done to Dr. Polosmky, an award of attorneys' fees is necessary and, because Plaintiffs' discovery responses remain deficient, Plaintiffs should also be ordered to provide full and complete discovery responses before October 14, 2019, so that those responses and the missing materials can be reviewed with Dr. Beyer at his deposition on October 16, 2019, a deposition which must occur at this late juncture only due to Plaintiffs' willful failure to provide full and complete responses in accordance with the discovery deadlines set by Court order.

---

[14] *See* Doc 196 and Doc. 201.

15

Respectfully submitted this 10th day of October, 2019.

SHERMAN & HOWARD L.L.C.

*s/ Beth Ann Lennon*
Emily F. Keimig
Beth Ann Lennon
633 17th St., Suite 3000
Denver, CO 80202
Telephone: (303) 297-2900
Facsimile: (303) 299-0940
Email: ekeimig@shermanhoward.com
blennon@shermanhoward.com

*Attorneys for Dr. Polomsky*

50769111.1

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on this 10th day of October, 2019, a true and correct copy of the foregoing **DR. POLOMSKY'S MOTION FOR DISCOVERY SANCTIONS AND TO COMPEL PLAINTIFFS' COMPLIANCE WITH THEIR OBLIGATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email to the following:

| | |
|---|---|
| Thomas P. Howard | C. Gregory Tiemeier |
| Scott E. Brenner | TIEMEIER & STICH, P.C. |
| William C. Groh, III | 1000 East 16th Avenue |
| THOMAS P. HOWARD, LLC | Denver, CO 80218 |
| 842 W. South Boulder Road, Suite 100 | Email:   gtiemeier@tslawpc.com |
| Louisville, Colorado 80027 | |
| Email:   thoward@thowardlaw.com | |
| Email:   sbrenner@thowardlaw.com | |
| Email:   wegroh@thowardlaw.com | |

*s/ Theresa M. Bohrer*
Theresa M. Bohrer, Legal Secretary

17

50769111.1