IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03099-MEH

BEYER LASER CENTER, LLC, and
CRAIG F. BEYER,

    Plaintiffs/Counterclaim Defendants,

v.

MATEJ POLOMSKY,

    Defendant/Counterclaimant.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant Matej Polomsky's Second[1] Motion for Summary Judgment ("Motion"). ECF 150. Defendant seeks summary judgment in his favor on Plaintiffs' four remaining claims: (1) defamation; (2) malicious prosecution; (3) intentional interference with an existing contractual relation; and (4) civil conspiracy.

Defendant argues, first, Plaintiffs have presented no evidence that he caused their injuries and, second, there is no dispute that his complaint to the Colorado Medical Board was true. On these bases, Defendant argues all four of Plaintiffs' claims fail. In addition, Defendant contends that Plaintiffs' defamation and civil conspiracy claims are barred by the statute of limitations.

---

[1] Defendant filed his "first" motion for summary judgment arguing that he was entitled to statutory immunity and that claim preclusion barred Plaintiffs' claims. ECF 71. The Court held that, regarding statutory immunity, Plaintiffs raised a genuine issue of material fact as to whether Defendant filed his DORA complaint in good faith, and concluded that Defendant failed to demonstrate the application of claim preclusion in this case. ECF 78. On June 26, 2018, the Court granted Defendant's Motion for Leave to File a Second Motion for Summary Judgment, ECF 112, and this Motion followed. On September 20, 2019, Defendant filed a Motion for Reconsideration, ECF 196, requesting the Court reconsider its Order ruling on claim preclusion (ECF 78).

Finally, he argues for summary judgment in his favor on his counterclaim against Plaintiffs under the Colorado Consumer Protection Act ("CCPA"). Ultimately, as addressed in a separate order, the Court concludes that Plaintiffs are entitled to summary judgment on the CCPA claim.

For the reasons that follow, the Court will deny Defendant's Motion.

## **FINDINGS OF FACT**

The Court makes the following findings of fact viewed in the light most favorable to Plaintiffs, who are the non-moving parties in this matter.

1. Plaintiff Craig F. Beyer and Defendant Matej Polomsky are ophthalmologists. ECF 150 ¶ 1; ECF 166 ¶ 1.

2. In 2011, Dr. Beyer hired Dr. Polomsky for a fellowship at Plaintiff Beyer Laser Center ("BLC") that began on the completion of Dr. Polomsky's residency in the summer 2012. ECF 150 ¶ 1; ECF 166 ¶ 1.

3. During Dr. Polomsky's fellowship, BLC used a "VISX" laser to perform laser vision correction ("LVC") procedures. ECF 150 ¶¶ 2-3; ECF 166 ¶¶ 2-3. LVC procedures are performed to correct refractive errors of the eye. The intent of the procedure is to correct a patient's vision so he or she will no longer require glasses or contact lenses. ECF 150 ¶ 2; ECF 166 ¶ 2.

4. The VISX laser may be operated using a number of different treatment cards. Each card provides the user with specific access to proprietary software required to operate the laser. ECF 150 ¶ 4; ECF 166 ¶ 4.

5. Each treatment card offered different features at varied costs. ECF 150 ¶ 13; ECF 166 ¶ 13.

6. On October 25, 2012, Dr. Richard Stewart, another ophthalmologist at BLC, filed a complaint with the Colorado Medical Board ("CMB") accusing Dr. Beyer of obtaining patients' consent for a specific procedure and then "ultimately performing an entirely different procedure." ECF 150-20 at 5; ECF 166 ¶ 21. In the complaint, Dr. Stewart stated that Dr. Beyer had been "substituting the PTK[2] cards for PRK/LASIK cards and passing this off to patients as refractive surgery." ECF 150-20 at 6.

7. In November 2012, Dr. Polomsky filed a similar complaint with the CMB. In his letter, he reported that Dr. Beyer "ha[d] been switching laser vision correction treatment cards without patients' knowledge or permission." ECF 150-19; ECF 150 ¶ 19; ECF 166 ¶ 19. He asserted that the "switched treatment cards were of inferior quality to what the patient asked for, had been consented for, and paid for." ECF 150-19.

8. On December 24, 2012, a third complaint regarding Dr. Beyer was filed anonymously with the CMB. ECF 195 ¶ 1; ECF 201 at 2.

9. On March 5, 2014, the Colorado Department of Regulatory Agencies ("DORA") informed Dr. Beyer that the CMB was initiating an investigation into his "conduct as a licensed physician." ECF 150-20 at 3. DORA stated it was beginning the investigation, because it "ha[d] received the attached complaint" regarding his conduct. The attachment was the complaint submitted by Dr. Stewart in October 2012. *See id.* at 3, 5-7.

10. In the notice of investigation, the CMB subpoenaed medical records for specific patients, and Dr. Beyer provided copies of those records. ECF 150-20 at 2; *see* ECF 150-21 at 1-2; ECF

---

[2] It is undisputed that "PTK" stands for phototherapeutic keratectomy and "PRK" stands for photorefractive keratectomy.

166-1 ¶ 23. Dr. Beyer also informed the CMB that he had used PTK cards on the patients it reviewed. ECF 166-1 ¶ 23.

11. On July 31, 2014, Cindy Reinhardt, a DORA investigator, emailed the following message to Dr. Polomsky:

> In November 2012, you sent a letter to the [CMB] regarding a complaint you had about Dr. Craig Beyer. The complaint was combined with another complaint and recently sent to my office for investigation. Can you contact me regarding your complaint? I will need to ask you a few questions about what you witnessed. Thank you.

ECF 166-10.

12. On March 13, 2015, the CMB determined it had "reasonable grounds" to conclude Dr. Beyer had "deliberately and willfully violated" ethical standards based on his practice of using PTK cards to perform PRK (or "Lasik") procedures. ECF 150-21 at 1-2. It then suspended Dr. Beyer's license to practice medicine "pending proceedings for suspension or revocation." *Id.* at 2. The notice informed Dr. Beyer of the opportunity to request a hearing before the CMB to argue "why the suspension should be set aside." *Id.* at 3.

13. At the hearing held on April 9, 2015, the CMB "reviewed and considered new information regarding th[e] matter," concluded the suspension should be terminated, and reinstated Dr. Beyer's license to "active and in good standing." ECF 150-22 at 1-2.

14. On June 22, 2015, Dr. Beyer filed a lawsuit against Dr. Stewart and "John Doe" (the "First Lawsuit") in Boulder County, Colorado, District Court. ECF 195 ¶ 1; *see also* ECF 201 at 5 and ECF 186 at 3-18. This lawsuit brought claims and sought damages related to the complaints filed with DORA by Dr. Stewart on October 25, 2012 and anonymously on December 24, 2012. ECF 186 at 5, 10.

# **LEGAL STANDARDS**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no *genuine* issue of *material* fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## **ANALYSIS**

Here, Defendant makes three arguments to support summary judgment on all four of Plaintiffs' claims. First, he asserts that Plaintiffs have not presented sufficient evidence to create a dispute of fact as to whether Defendant's conduct caused Plaintiffs' damages. Second, he contends that no party disputes the statements in his complaint to the CMB were true, and he argues that all of Plaintiffs' claims fail on that basis. Third, Defendant argues that Plaintiffs' defamation and civil conspiracy claims are barred by the statute of limitations. The Court will address each argument in turn.

**I.      Causation**

Defendant's first argument – that all of Plaintiffs' claims fail because they are unable to present any evidence Defendant caused their injuries – is a permissible method of supporting

summary judgment. *Celotex Corp.*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). After citing to the elements required to prove Plaintiffs' claims and concluding that all claims require proof of "proximate cause," Defendant asserts that

> . . . Dr. Beyer was specifically informed by the CMB that the report which prompted [its] investigation was not Dr. Polomsky's report, it was a separate report filed by Dr. Stewart. Because the CMB conducted an independent investigation, prompted by a report other than Dr. Polomsky's, before concluding it was required to suspend Dr. Beyer's license, and because there is no record or evidence of the reasons they ultimately did so, there is no way Dr. Beyer can establish that Dr. Polomsky was the cause of the suspension . . . . Indeed, even assuming Dr. Beyer could prove that Dr. Polomsky's report was false (he cannot), that would not carry the day, because according to Plaintiffs and their counsel, there is no way to determine whether the report had bearing on the CMB's conclusion that Dr. Beyer had to be suspended. Because all of the damages that Plaintiffs are seeking to recover in this lawsuit are those arising from the suspension of Dr. Beyer's medical license by the CMB, a suspension that Plaintiffs cannot show was a result of Dr. Polomsky's report, all of Plaintiffs' claims fail as a matter of law.

ECF 150 at 12 (citations omitted). Defendant's assertions shift the burden to Plaintiffs to "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotation omitted).

To meet this burden, Plaintiffs cite to two portions of the record. First, Plaintiffs rely on Dr. Beyer's own declaration and portions of his deposition. In his declaration, Dr. Beyer states, "The CMB's decision [to suspend him] was based entirely upon [its] interpretation of Dr. Stewart's and Defendant's false reports that Dr. Beyer was performing non-refractive PTK treatments and not the refractive PRK or LASIK treatments that I performed using the PTK cards." ECF 166-1 ¶ 23 (emphasis omitted). They also cite to a portion of Dr. Beyer's deposition, in which he states

7

that "[o]ne of the [CMB] members" said "CMB" suspended his license because it had received complaints from "two physicians." ECF 166-11. Plaintiffs contend this is sufficient to show a genuine dispute of material fact as to whether Defendant's conduct caused Plaintiffs' injuries.

Defendant counters that the Court cannot consider these statements under Rule 56, because they are inadmissible. The Court agrees. To the extent that Dr. Beyer asserts he "knows" why the CMB suspended his license in March 2015, he offers no foundation demonstrating that the information he proffers is based on personal knowledge. Therefore, his statement is inadmissible under Fed. R. Evid. 602. To the extent Dr. Beyer declares that some unidentified member of the CMB "told" him the reason it suspended him, the statement is inadmissible hearsay under Fed. R. Evid. 802. Because these proffered statements are inadmissible, they cannot defeat summary judgment. Fed. R. Civ. P. 56(c)(2); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

As a second basis for denying summary judgment, Plaintiffs cite to a July 31, 2014 email to Defendant from DORA investigator Cindy Reinhardt in which she informed Defendant that his complaint "about Dr. Craig Beyer . . . was combined with another complaint and recently sent to [her] office for investigation."[3] Resp. at 16 (citing Ex. 10, ECF 166-10). In the email, Reinhardt asked to speak with Defendant "about what [he] witnessed." ECF 166-10. Defendant counters that the email "does not mention Dr. Stewart's report at all" (Reply App. ¶ 21), presumably referring to the initial notice from Reinhardt to Plaintiffs on March 5, 2014, to which Dr. Stewart's complaint was attached. *See* ECF 150-20. The Court finds any such omission in the July 31, 2014 email, without more, immaterial for purposes of the Motion, and concludes that a reasonable juror

---

[3] Notably, Defendant does not object to the admissibility of this email in either his briefing on the present motion or in his Motion to Strike Exhibits. *See* ECF 170 at 1.

could find that Defendant's DORA complaint not only instigated the investigation, but also may have contributed to the decision to suspend Dr. Beyer's license to practice medicine. Therefore, Plaintiffs have met their burden of demonstrating a dispute of material fact as to causation, and summary judgment is not appropriate on this basis. *See Howell v. Centric Grp., LLC*, No. 09-cv-02299-MSK-CBS, 2011 WL 4499372, *5 (D. Colo. Sept. 27, 2011) ("Under Colorado law, it is generally within the province of the fact-finder to determine the relationship between the defendant's conduct and the plaintiff's condition, as long as the evidence establishes 'such facts and circumstances as would indicate with reasonable probability' that causation exists." (quoting *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987))).

Defendant also argues the CMB's investigation of Dr. Beyer was an intervening cause that breaks any chain of causation that might be attributed to him. This argument fails to support summary judgement in Defendant's favor.

In Colorado, "intervening causes that are reasonably foreseeable do not ordinarily relieve a defendant of liability." *Heinrich v. Master Craft Eng'g, Inc.*, 131 F. Supp. 3d 1137, 1148 (D. Colo. 2015) (citing *Jones v. Caterpillar Tractor Co.*, 701 P.2d 84, 86 (Colo.App.1984)); *see also Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 81 (Colo. 2001) ("An intervening cause only relieves the defendant of liability if it was not reasonably foreseeable."). Importantly here, "[f]oreseeability is ordinarily a question of fact." *Id.* Foreseeability 'depends in part on the common sense consideration of the risks created by various conditions and circumstances." *Id.* (quoting *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609, 612 (Colo. App. 1998)). Thus, the ultimate question is "whether the harm plaintiff suffered was 'within the scope of the risk created by defendant's conduct.'" *Id.* (quoting *Scharrel v. Wal-Mart Stores, Inc.*, 949 P.2d 89, 94 (Colo.

App. 1997)). That is, "the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct." *Id.* at 1148-49.

Here, a reasonable jury could find that a state medical board's decision to suspend a doctor's license is not "intentionally harmful" and is within "the scope of risk created" when another doctor submits an ethics complaint to that board. Therefore, whether Defendant's DORA complaint was the cause of Dr. Beyer's suspension is a question of fact, and summary judgment based on a purported lack of causation is not appropriate here.

## II. "Truth" of Dr. Polomsky's Complaint

Next, Defendant argues that, because his complaint to the CMB was "true," this also warrants summary judgment on all of Plaintiffs' claims. The relevant portions of Defendant's DORA complaint state:

> I am writing to report that Craig F. Beyer, D.O. of Beyer Laser Center, has been switching laser vision correction treatment cards without patients' knowledge or permission. When this was done, the switched treatment card[s] were of inferior quality to what the patient asked for, had been consented for, and paid for.

ECF 150-19. In the briefing, Defendant argues first that the complaint to the CMB was "completely" true, then ultimately argues that the "gist" of the complaint was true. That is, Defendant encourages the Court not to focus on the word "switched" (or "switching") in his complaint and contends that Dr. Beyer's admitted practice of using PTK cards to perform PRK procedures makes the "gist" of the complaint true. He asserts that this "truth" defeats all of Plaintiffs' claims. Not surprisingly, Plaintiffs counter that material portions of the complaint are false.

10

It appears that the object of Defendant's argument is Plaintiffs' defamation claim. In Colorado, a plaintiff who brings a defamation claim over a matter of public concern[4] must prove the statement was "(1) defamatory, (2) materially false, (3) concerned the plaintiff, (4) published to a third party, (5) published with actual malice, and (6) caused actual or special damages." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1110 (10th Cir. 2017). A person's statement is not actionable simply because it was not precisely correct. "Substantial truth, not absolute or literal truth, is the standard for the affirmative defense of truth to a defamation claim—'it is sufficient if the substance, the gist, the sting, of the matter is true.'" *Id.* at 1110-11. This defense "requires [the Court] to consider the concept of [material] falsity[.]" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 513 (1991). "To qualify as material the alleged misstatement must be likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth; a misstatement is not actionable if the comparative harm to the plaintiff's reputation is real but only modest." *Bustos v. A & E Television Networks*, 646 F.3d 762, 765 (10th Cir. 2011) (quoting Colo. Jury Inst. Civ. 22:13). And, relevant here, "deciding the materiality of a falsehood often requires a jury." *Id.* at 767. As the Honorable Neil M. Gorsuch concluded while sitting at the Tenth Circuit, "Whether a particular misstatement is likely to injure the plaintiff's reputation in the mind of a reasonable member of the community is often best decided by reasonable members of the community." *Id.*

In large part, the parties here do not dispute that certain events occurred at BLC during Defendant's fellowship: in particular, Dr. Beyer concedes he was performing PRK procedures with

---

[4] Where a statement relates to a matter of public concern or where the statement is made to officials tasked with investigating the conduct at issue, the plaintiff must also prove falsity by clear and convincing evidence, actual malice, and actual damages. *Lawson v. Stow*, 327 P.3d 340, 347 (Colo. App. 2014).

PTK cards. ECF 150-3 at 189:6–13. At the same time, Defendant does not suggest that Dr. Beyer specifically informed patients that he would perform a refractive procedure with one type of card then, actually, used another type of card. *See* ECF 150 at 19. Viewing the facts in the light most favorable to the Plaintiffs, the Court finds the question of whether the "gist" of Defendant's complaint to the CMB was true is a question for a jury.[5] Therefore, summary judgment in favor of Defendant on all of the Plaintiffs' claims is not appropriate on this basis.[6]

## III. Statute of Limitations

Finally, Defendant argues that no genuine issues of material fact exist as to whether Plaintiffs' defamation and civil conspiracy claims are time barred. Although Defendant initially made this argument in the Second Motion for Summary Judgment, at a September 18, 2019 Discovery Conference, he requested the opportunity to revisit the statute of limitations argument in light of newly disclosed documents from Plaintiffs, filed at ECF 186. At that Conference, the Court invited the parties to submit additional written argument as to whether Plaintiffs' defamation and civil conspiracy claims are barred by the statute of limitations, which the parties did. ECF 195 and ECF 201. For reasons explained below, the Court disagrees with Defendant and finds that genuine issues of material fact exist as to whether Plaintiffs' claims are time barred such that

---

[5] In determining whether alleged defamatory language is actionable or protected, courts consider three factors: "how a statement is phrased (which often reveals how the statement was intended to or reasonably would be perceived); the entire context in which the statement was made (i.e., the court will not focus on any one particular word or phrase); and 'all the circumstances surrounding the statement, including the medium through which it is disseminated and the audience to whom it is directed.'" *Nguyen v. Mai Vu*, No. 18-cv-01132-CMA-NRN, 2018 WL 5622634, at *5 (D. Colo. Oct. 30, 2018), *report and recommendation adopted*, No. 18-cv-01132-CMA, 2018 WL 6603955 (D. Colo. Nov. 15, 2018) (citing *Sall v. Barber*, 782 P.2d 1216, 1218 (Colo. App. 1989) and *Burns v. McGraw Hill Broadcasting, Inc.*, 659 P.2d 1351, 1360 (Colo. 1983)). Thus, even if Defendant were to demonstrate that Dr. Beyer, in fact, used an "inferior" card for a "custom" procedure, a fact finder must consider all of the circumstances, including why, how, and to whom his statement was directed.

[6] Defendant also argues there is no dispute that he did not act with an improper motive, which is necessary to support Plaintiffs' civil conspiracy claim. The Court has already rejected this argument. *See* ECF 78 at 12. Again, Plaintiffs have presented sufficient evidence to raise a material factual issue as to whether Dr. Polomsky acted with an improper purpose. *See id.* (citing ECF 73-1 at 56:9–14).

Summary Judgment is not warranted. Defendant's argument from the Motion and the supplemental written argument shall be addressed in turn below.

### A. Defendant's Second Motion for Summary Judgment

In Colorado, a defamation claim must be brought within one year of the date on which the cause of action accrues. Colo. Rev. Stat. § 13-80-103(1)(a); *Burke v. Greene*, 963 P.2d 1119, 1121 (Colo. App. 1998). Because the civil conspiracy claim is founded on the defamation claim, it carries the same limitations period. *Rupnow v. Panio*, No. 16-cv-00813-WJM-MEH, 2017 WL 818664, at *3 (D. Colo. Mar. 2, 2017). A cause of action accrues when "both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Colo. Rev. Stat. 13-80-108(1); *Burke*, 963 P.2d at 1121.

In the Motion, Defendant relies on a brief excerpt of Dr. Beyer's deposition to support his argument that Plaintiffs' defamation and civil conspiracy claims are time barred. Specifically, Defendant cites to Dr. Beyer's testimony that a BLC employee told him in early 2013 she "heard Dr. Stewart asking Dr. Polomsky to file a complaint" with the CMB. *See* ECF 150-3 at 377:9–23. Defendant suggests that Dr. Beyer, having this information, knew or should have known that he had a claim against Defendant before or at the time his license was suspended in March 2015.

The Court finds this testimony (if admissible) simply raises material factual issues. First, a reasonable juror could find that Dr. Beyer's knowledge of a simple request to file a complaint is insufficient to constitute the knowledge of a legal claim, which is necessary for a statute of limitations analysis. Second, the record demonstrates that when the CMB informed Dr. Beyer in March 2015 that it was initiating an ethics investigation, it attached *Dr. Stewart's* (not Dr. Polomsky's) complaint as its impetus. *See* ECF 150-20. Third, the evidence reveals that after Dr.

Beyer was notified of the investigation, he contacted Defendant who denied any knowledge of the matter. ECF 166-29.[7] Thus, a reasonable juror could conclude that when Dr. Beyer exercised due diligence that might have revealed he had a claim against Defendant, Defendant (allegedly, falsely) denied any knowledge of or involvement in the matter.

Dr. Beyer attests that it was in the course of the First Lawsuit when he learned of Defendant's complaint to the CMB. *See* ECF 80-1 ¶¶ 14, 16. He argues in his response that he received a copy of the complaint "in early 2016," and he cites to his dispute with Defendant's "undisputed fact 21," in which Dr. Beyer claims that a copy of Reinhardt's email was produced to him during discovery in the prior lawsuit. Resp. 41. In his reply, Defendant does not dispute that Dr. Beyer received a copy of the complaint in early 2016 and/or a copy of Reinhardt's email during discovery in the prior lawsuit.

**B. Supplemental Written Argument as to Statute of Limitations**

In his supplemental written argument as to the statute of limitations issue, Defendant relies on an email, contained in the newly disclosed documents from Plaintiffs, which, Defendant argues, "conclusively establishes that no later than October 9, 2015, Dr. Beyer knew or should have known of Dr. Polomksy's report to the [CMB]" ("the Email"). ECF 201 at 1. The Court disagrees that this email is "conclusive" such that it precludes any genuine issue of material fact as to when Plaintiffs knew or should have known about Defendant's November 2012 complaint.

---

[7] The Court denies Defendant's motion to strike this exhibit. Defendant argues that this exhibit should be excluded, solely because Plaintiffs have highlighted the relevant passage of the exhibit. ECF 170 at 3. As authority for their argument, Defendant cites generally to *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701 (7th Cir. 2013). This case does not state that a party may not highlight relevant portions of an exhibit submitted in conjunction with a motion for summary judgment, and the Court has not found any authority supporting such a proposition. Having no other objection, the Court will consider the document.

Dr. Beyer sent the Email on October 9, 2015 to Deb Osterman and "cc'd" George Berg and Jim Martin. At the time the Email was sent, George Berg was Plaintiffs' attorney in the First Lawsuit; Deb Osterman is George Berg's legal assistant. Based on other emails filed at ECF 186 and representations made to the Court at the September 18 and September 23, 2019 Discovery Conferences, Jim Martin is a friend of Dr. Beyer's who has a juris doctor degree but who was not licensed to practice law at the time Plaintiff sent the October 9, 2015 email. *See id*. at 21.

The subject of the Email is "John Doe (Matej Polomsky, MD)", and in it Plaintiff shares as email attachments his "file" regarding Dr. Polomsky's "interaction in" the First Lawsuit. One attachment is the anonymous complaint received by DORA on December 24, 2012, which Plaintiff describes as "presumably written by Polomsky (John Doe) in association with Stewart." *Id*. at 44. Another attachment is an email from Dr. Stewart to a DORA employee in which Dr. Stewart states he is providing the employee "[t]he complaint of another physician…who sent me a copy of the complaint he sent to the Board." *Id.* at 56. In the Email, Dr. Beyer comments on this attached Stewart email, stating that Stewart "must be referring to Polomsky's CXL complaint received by DORA on *12/24/12*." *Id*. at 45 (emphasis added).

Because only admissible evidence may be considered when ruling on a motion for summary judgment, *World of Sleep, Inc.*, 756 F.2d at 1474, in order for the Court to analyze the Email in connection with Defendant's argument, the Email must be admissible. Although the Email was sent from Dr. Beyer to his attorney and attorney's support staff, the Email was also sent to Jim Martin, who was not a licensed attorney. Because Dr. Beyer copied Jim Martin on the Email and Dr. Beyer knew Martin was not a licensed attorney, Dr. Beyer is foreclosed from

15

claiming that the Email[8] is shielded by attorney-client privilege. *See Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 117, 120 (S.D.N.Y. 2013), order aff'd, 982 F. Supp. 2d 260 (S.D.N.Y. 2013).[9] Dr. Beyer's statements within the Email are admissible, non-hearsay statements by a party-opponent because Defendant is the party offering the contents of the Email in support of his Motion. Fed. R. Evid. 801(d)(2). The two attachments relevant to this analysis, the copy of the complaint received by DORA on December 24, 2012 and Dr. Stewart's email to a DORA employee, are facts that would not be subject to attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). Both attachments are being used for their effect on Dr. Beyer in whether or not they put him on sufficient notice of Dr. Polomsky's November 2012 report to DORA; the attachments, therefore, do not run afoul of the prohibition on hearsay and would be admissible. *See* Fed. R. Evid. 801.

Defendant's supplemental argument for why Plaintiffs' claims are time barred relies entirely on the single line in the attached email from Dr. Stewart to the DORA employee: "[t]he complaint of another physician." The Court does not agree that this phrase precludes any genuine

---

[8] The Court limits the determination of the applicability of attorney-client privilege to the Email alone and makes no other determination as to the applicability of attorney-client privilege to any other document disclosed by Plaintiffs at ECF 186.

[9] The test for whether attorney-client privilege applies "remains whether the client had a reasonable belief that it was communicating with an attorney." *Gucci Am., Inc. v. Guess?, Inc.*, No. 09cv4373 (SAS), 2011 WL 9375, at *5 (S.D.N.Y. Jan. 3, 2011). In *Gucci* the court upheld a claim of attorney-client privilege where Gucci's in-house attorney was on inactive status with the state bar because Gucci reasonably believed the attorney it was communicating with an attorney. *Id*. The facts of that case contrast with those of *Anwar*, where the court determined that the attorney-client privilege did not apply to communications with unlicensed attorneys when the circumstances could not have reasonably suggested that the individual was licensed. 306 F.R.D. at 120. In this case, Dr. Beyer knew that Mr. Martin did not hold a valid license to practice law at the time of the Email, therefore he could not have had a reasonable belief that he was communicating with an attorney when emailing with Mr. Martin.

issues of material fact as to whether Plaintiffs' defamation and civil conspiracy claims are time barred. A reasonable jury could find that the Email attachments are not enough to have put Dr. Beyer on sufficient notice, actual or inquiry, of Dr. Polomsky's November 2012 report. The contents of the Email indicate that Dr. Beyer understood "[t]he complaint of another physician" to be referring to the anonymously-submitted December 2012 report. Understanding the text of Dr. Stewart's email in this way, a reasonable jury could find that at that time Dr. Beyer would have had no reason to think a third report existed such that he needed to inquire further about such a report.

Considering the evidence as a whole and in the light most favorable to the Plaintiffs, the Court finds Plaintiffs have raised a genuine issue of fact as to whether the defamation and civil conspiracy claims are time barred. Plaintiffs initiated this action on October 27, 2016. ECF 4. Dr. Beyer's testimony and argument regarding the timing of his knowledge of Defendant's complaint are sufficient for the Court to conclude that the question of whether the claims are barred by the statute of limitations should go to a jury. Therefore, Defendant has not shown the absence of any dispute of fact as to whether his claims are time barred, and summary judgment is not warranted.

## CONCLUSION

Defendant has failed to demonstrate that no genuine issues of material fact exist with respect to any of the Plaintiffs' four remaining claims. Also, as set forth in a separate order, Plaintiffs are entitled to summary judgment on Defendant's counterclaim. Therefore, Defendant's Motion for Summary Judgment [filed May 13, 2019; ECF 150] is **denied**.

17

Further, Defendant's Motion to Strike from Plaintiffs' Response to Defendant's Motion for Summary Judgment Exhibits 2, 3, 6, 9, 12, 13, 16, 17, 18, 19, 20, 21, 23, 24, 25, 29, 32, and 34 and the Paragraphs in Exhibit 1 that Are Based upon the Exhibits, as Well as Portions of Paragraph 23 in Exhibit 1 [filed July 1, 2019; ECF 170], construed as a request for the Court to decline to consider certain exhibits for purposes of the present motion, is **denied in part** as to Exhibit 29, as referenced herein; otherwise, because the Court did not consider the remaining exhibits, the motion is **denied as moot**.

SO ORDERED.

Entered and dated at Denver, Colorado, this 25th day of October, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge